# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : Case No. 23-cr-490 (SHS) |
| -against- | : |
| | : |
| ROBERT MENENDEZ, et als., | : |
| | : |
| Defendants. | : |
| | : |
| | : |

## DEFENDANT FRED DAIBES' MEMORANDUM OF LAW
## IN SUPPORT OF OMNIBUS MOTIONS

Timothy M. Donohue,
Arleo & Donohue, LLC
622 Eagle Rock Avenue
West Orange, NJ 07052
(973) 736-8660

Attorneys for Defendant, Fred Daibes

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………………………………….1

STATEMENT OF FACTS………………………………………………………………..2

LEGAL ARGUMENT……..………………………………………………………..4

    POINT ONE.   COUNTS ONE AND TWO OF THE SECOND SUPERSEDING
         INDICTMENT MUST BE DISMISSED FOR FAILURE TO
         STATE AN OFFENSE AS TO THIS DEFENDANT…………………4

         1. The U.S. Attorney Scheme……………………………………….......5
         2. The Qatar Investment Scheme…….…………………………………7

    POINT TWO.   COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE
         THE SSI DOES NOT ADEQUATELY ALELGE VENUE…..……….9

    POINT THREE.  COUNTS ONE AND TWO ARE DUPLICTIOUS AND
         MUST BE DISMISSED…………………………………….……..14

    POINT FOUR.  THE COURT SHOULD SEVER DAIBES FROM THE OTHER
         DEFENDANTS DUE TO MISJOINDER UNDER RULE 8(b)
         AND/OR UNDULY PREJUDICAL JOINDER UNDER
         RULE 14……………………………………………………..……18

         1. Daibes should be severed from the other defendants due to
         misjoinder under Rule 8 (b)………………………….………..18

         A.  The alleged acts are not unified by a substantial identity
         of facts or participants...…………………………….………20

         B.  The alleged acts do not arise out of a common plan or
         scheme…………………………………………………….20

         2.  Alternatively, Daibes should be severed from the other
         defendants due to prejudicial joinder under Rule 14……..…….21

    POINT FIVE.   DAIBES JOINS IN THE MOTIONS OF ALL
         CODEFENDANTS AND RESERVES THE RIGHT TO FILE
         ADDITIONAL MOTIONS……………………………………..…..26

    CONCLUSION………………………………………………………….……27

# **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page**

*Gravel v. United States*, 408 U.S. 606 (1972)…………………………………………………..5

*Kotteakos v. United States*, 328 U.S. 750 (1946)…………………………………15,16,24,25

*McDonnell v. United States*, 579 U.S. 550 (2016)…………………………………………..*passim*

*Schaffer v. United States*, 362 U.S. 511(2003)……………………………………………22

*United States v. Aracri*, 968 F.2d 1512(2d Cir. 1992)……………………………………15,17

*United States v. Alfisi*, 308 F 3d 144 (2d Cir. 2002)…………………………………………6

*United States v. Attanasio*, 870 F. 2d 809 (2d Cir. 1989)………………..…………….18,19

*United States v. Bertolotti*, 529 F.2d 149 (2nd Cir. 1975)…………………………………23,24

*United States v. Bezmalinovic,* 962 F. Supp. 435 (S.D.N.Y. 1997)………………………9

*United States v. Bledsoe*, 674 F.2d 647 (8th Cir. 1982)……………………………………19

*United States v. Castro*, 776 F.2d 1116 (3rd Cir. 1985)……………………………………24

*United States v. Cervone,* 907 F.2d 332 (2d Cir.1990) …………………………………..19

*United States v. Chang An-Lo*, 851 F. 2d 547 (2d Cir. 1988)……………………………..22

*United States v. Chow*, 993 F. 3d 125 (2d Cir. 2021)……………………………………10

*U.S. v. Cruikshank*, 92 U.S. 542 (1875)……………………………………………..8

*United States v. Dowdy*, 479 F. 2d 213(4th Cir. 1973)……………………………………5

*United States v. Eufrasio*, 935 F.2d 553 (3rd Cir. 1991)………………………………..18,19

*States v. Feliz*, 467 F. 3d 227 (2d. Cir. 2006)……………………………………………..24

*United States v. Feyrer,* 333 F.3d 110 (2d Cir. 2003)………………………………….18,20

*United States v. Gabriel*, 920 F. Supp 498 (S.D.N.Y. 1996)………………………………17

*United States v. Geibel*, 369 F.3d 682 (2d Cir. 2004)……………………………………10,11

*United States v. Giampa*, 904 F. Supp. 235 (D.N.J. 1995)…………………………………..19

*United States v. Halper,* 590 F.2d 422 (2d Cir.1978)…………………………………..20

*United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982)…………………………………...19

*United States v. Heicklen*, 858 F. Supp. 2d 256 (S.D.N.Y. 2012)………………………...7

*United States v. Johnson*, 323 U.S. 273 (1944)…………………………………………...9

*United States v. Lane*, 474 U.S. 438 (1986)……………………………………………18,19

*United State v Maldonado-Rivera*, 922 F. 2d 934 (2d Cir. 1990)………………………..14,15,24

*United States v. McLain*, 823 F.2d 1457 (11th Cir. 1987)…………………………………..23

*United States v. Menashe,* 741 F.Supp. 1135(S.D.N.Y.1990)…………………………….21

*United States v. Naranjo*, 14 F.3d 145 (2d Cir. 1994)…………………………………….10

*United States v. Ohle*, 678 F. Supp. 2d 215 S.D.N.Y. (2010)…………………………….17,21

*United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020)…………………………………….10

*United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005)…………………………….10

*United States v. Reed*, 773 F. 2d 477 (2d. Cir. 1985)…………………………………….11

*United States v. Rigas*, 281 F. Supp. 2d 660 (S.D.N.Y. 2003)…………………………..15,17

*United States v. Rittweger,* 524 F.3d 171 (2d Cir.2008)…………………………………..21

*United States v. Rosa*, 11 F.3d 315 (2d. Cir. 1993)……………………………………….24

*United States v. Royer*, 549 F. 3d 886 (2d. Cir. 2008)…………………………………….10

*United States v. Saavedra*, 223 F. 2d 85 (2d Cir. 2000)…………………………………..9,10

*United States v. Silver*, 948 F. 3d 538 (2d Cir. 2020)……………………………………..6,7

*United States v. Sophie*, 900 F.2d 1064 (7th Cir. 1990)…………………………………..23

*United States v. Sturdivant*, 244 F 3d 71 (2d Cir. 2001)………………………………….15,17

*United States v. Sun-Demand Growers of California*, 526 U.S. 398 (1999)……………...6

*United States v. Turoff,* 853 F.2d 1037 (2d Cir.1988)……………………………………18,20

*United States v. Tzolov*, 642 F.3d 314 (2d Cir. 2011)…………………………………10

*United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014)…………………………..24

*United States v. Vanwort*, 887 F.2d 375 (2d. Cir. 1989)…………………………………15.24

*United States v. Williams*, 205 F. 3d 23 (2d Cir. 2020)…………………………………17

*United State v. Wexler*, 621 F. 2d 1218 (2d. Cir. 1980)…………………………………..8

*Zafiro v. United States,* 506 U.S. 534 (1993)…………………………………………21,22,23


**Statutes**

18 U.S.C. § 201…………………………………………………………………5

18 U.S.C. § 219…………………………………………………………………3

18 U.S.C. § 371 ………………………………………………………………2,3,5

18 U.S.C. § 1343 ………………………………………………………………3,5

18 U.S.C. § 1346………………………………………………………………3,5

18 U.S.C. § 1349 ………………………………………………………………..5

18 U.S.C. § 1951………………………………………………………………..3

18 U.S.C. § 3147 (1)…………………………………………………………..2
22 U.S.C.

22 U.S.C. §§ 611-621…………………………………………………………3

**Other Authorities**

Fed. R. Crim. Pro. 7……………………………………………………………7

Fed. R. Crim. Pro. 8……………………………………………………………1,18,19,21

Fed. R. Crim. Pro. 12……………………………………………………………8,9

Fed. R. Crim. Pro.14……………………………………………………………1,21,22

## PRELIMINARY STATEMENT

This brief is submitted in support of defendant Fred Daibes omnibus motions.  Daibes joins in the motions filed by all co-defendants in this matter.  Specifically, Daibes joins in the pending motion to dismiss Counts One and Two of the Indictment based upon those counts running afoul of the Constitution's Speech or Debate Clause, as well as the Supreme Court's decision in *McDonnell v. United States*, 579 U.S. 550 (2016).   These counts fail to charge an offense as to Daibes. This defendant also joins in the motion to dismiss the indictment based upon a lack of venue and the prejudicial grouping of separate schemes into single conspiracy counts. Alternatively, Daibes requests a severance under Fed. R. Crim. Pro. 8(b) and 14. Finally, Daibes joins in all motions previously filed and reserves the right to file additional motions as counsel's review of discovery is ongoing.

The arguments of all co-defendants are hereby incorporated by reference and will not be repeated at length.

1

## STATEMENT OF FACTS

The Overview portion of the second superseding indictment ("SSI" or "the indictment") sets forth a series of unrelated alleged conspiracies involving the various defendants and Senator Menendez. *See* ¶¶ 1-70 of the indictment. First, it alleges that Senator Menendez took actions on behalf of Egypt in exchange for the Senator and defendant Nadine Menendez receiving things of value from defendant Hana. Next, the indictment alleges a separate and distinct scheme whereby the Senator allegedly received bribes in order to assist defendant Hana in connection with a lucrative contract that Hana had secured from the Government of Egypt in connection with Hana's halal business in New Jersey.  Third, the indictment alleges that the Senator helped (or tried to help) defendant Uribe in connection with certain pending criminal matters in state court in New Jersey. In return, Uribe allegedly provided an automobile to Nadine Menendez. Fourth, the indictment alleges that Senator Menendez allegedly accepted things of value from defendant Daibes in return for the Senator's agreement to recommend a candidate for U.S. Attorney in the District of New Jersey that he thought would be sympathetic to Daibes in his pending criminal case in federal court in New Jersey. The government alleges that in return Daibes provided things of value to the Senator. Finally, the SSI adds a totally new theory and alleges that the Senator received things of value from Daibes for introducing Daibes to an individual who operated a state-linked investment fund that could invest in Daibes' real estate development project in Edgewater, New Jersey.

Count One incorporates all of the allegations of these separate and distinct schemes and charges Daibes along with all of the other defendants in a single conspiracy to commit bribery of a public official, under 18 U.S.C. § 371 and § 3147 (1). This count alleges that Senator Menendez demanded and received things of value "in return for being influenced in the performance of an

official act and for being induced to do an act and omit to do an act in the violation of his official duty." Id. at ¶ 73. It further alleges that defendants Nadine Menendez, Hana, Uribe and Daibes gave or offered things of value to Senator Menendez with intent to influence an official act by him and to induce the Senator to act in violation of his official duties. Id. at ¶ 74.

Similarly, Count Two incorporates all of the separate schemes alleged in the prior paragraphs and charges Daibes along with all of the other defendants with conspiracy to commit honest services fraud pursuant to 18 U.S.C. § 1343 and § 1346. It alleges that all the defendants devised a scheme and artifice to defraud the public of the intangible right to Senator Menendez's honest services.

Count Three charges only defendants Senator Menendez and Nadine Menendez with conspiracy to commit extortion under color of official right pursuant to 18 U.S.C. § 1951.

Finally, Count Four charges defendants Senator Menendez, Nadine Menendez and Wael Hana with conspiracy for a public official to act as a foreign agent under 22 U.S.C. §§ 611-621, 18 U.S.C. § 219 and 18 U.S.C. § 371.

3

## POINT ONE

### COUNTS ONE AND TWO OF THE SECOND SUPERSEDING INDICTMENT MUST BE DISMISSED FOR FAILURE TO STATE AN OFFENSE AS TO THIS DEFENDANT

In Counts One and Two, the SSI alleges two separate schemes involving Senator Menendez and Daibes.  First, it alleges that the Senator sought to "disrupt" the pending federal criminal prosecution of Daibes in New Jersey.  SSI at ¶¶ 46-54.  The government alleges that Daibes provided things of value to the Senator in return for him recommending a candidate for U.S. Attorney that the Senator believed would be sympathetic to Daibes.  *Id*.  After that candidate was later confirmed and then recused himself, the SSI alleges that the Senator twice called the First Assistant who was then in charge of the Daibes case.  *Id*. at ¶ 53d, 53c.  The indictment provides no detail whatsoever regarding the substance of those conversations.

The second scheme involving Daibes was only recently added when the government returned the second superseding indictment.  The government now alleges that the things of value provided by Daibes to Menendez were apparently given for Menendez's assistance in helping Daibes secure a joint venture deal involving a Qatari investment fund.  *Id*. at ¶ 55.  According to the SSI, the Senator "introduced" Daibes to an investor who was a principal of a state-affiliated investment fund. *Id*. at ¶ 56.  The indictment then alleges that in order to further assist Daibes, the Senator issued a press release that was complimentary of Qatar, *id*. at ¶ 57, and that at a later date the Senator made reference to some Senate resolution.  *Id*. at ¶ 58.  The indictment does not specifically identify the Senator's involvement in that Senate resolution.

As will be set forth below, neither allegation can survive a motion to dismiss.  In each instance, the government's allegations either run afoul of the Supreme Court's ruling in *McDonnell v. United States*, 579 U.S. 550 (2016) or violate the Constitution's Speech or Debate Clause.

Count One of the Indictment charges a conspiracy under 18 U.S.C. § 371 predicated on a violation of bribery in violation of 18 U.S.C. § 201. Count Two of the Indictment charges a conspiracy to commit honest services fraud under 18 U.S.C. § 1349 in violation of 18 U.S.C. § § 1343 and 1346. All of the defendants are charged in Counts One and Two.[1] Notably, both counts require proof of a bribery offense. The express basis for Count One is bribery under 18 U.S.C. § 201, and by virtue of the *McDonnell* decision, the honest services statute requires proof of bribery or a kickback in order to pass constitutional muster. 579 U.S. at 566-67. Thus, both counts require a quid pro quo - - that the Senator agreed to accept something of value in exchange for taking some official act.

**1.      The U.S. Attorney Scheme**

There are two actions of the Senator that are alleged as part of this scheme. First, that the Senator recommended a candidate for U.S. Attorney in the District of New Jersey that he believed would be sympathetic to Daibes' pending case. *Id.* at ¶ 46. Second, that the Senator made two phone calls to the official who then had supervisory responsibility over the Daibes matter. *Id.* at ¶ 53d and e.

As set forth in the brief submitted in support of Senator Menendez's First Motion to Dismiss, the recommendation of a candidate for U.S. Attorney is a "legislative act" which falls squarely within the Senator's duties. *Gravel v. United States*, 408 U.S. 606, 625 (1972). Moreover, the Senator's meetings and interviews of potential nominees are also protected by the Speech or Debate Clause. *United States v. Dowdy*, 479 F. 2d 213, 224 (4th Cir. 1973). Those actions cannot be the touchstone for any quid pro quo between the Senator and Daibes. To the extent, they must be excised as to the Senator, severance would be required. See Point Four *infra.*

---

[1] Daibes is not charged in either Count Three or Four of the SSI.

Even assuming for purposes of this argument that these actions qualify as "official acts", the Indictment nevertheless fails to sufficiently identify the quid pro quo that is an essential element to both Count One and Count Two.  "The 'corrupt' intent necessary to a bribery conviction is in the nature of the quid pro quo requirement; that is, there must be 'a specific intent to give … something of value in exchange for an official act.'"  *United States v. Alfisi,* 308 F 3d 144, 149 (2d Cir. 2002) *quoting United States v. Sun-Demand Growers of California*, 526 U.S. 398, 404-05 (1999) (emphasis in original).

In order to establish that quid pro quo, the government must (1) identify the "particular question or matter" that the official would influence; and (2) allege that the official agreed to influence that matter at the time the payment or bribe was accepted or agreed upon.  *United States v. Silver*, 948 F. 3d 538, 552-3 (2d Cir. 2020).  The relevant time period in a quid pro quo bribery scheme is "the moment at which the public official accepts the payment" or agrees to accept it.  Id. at 556.  Thus, a focused and concrete question or matter must be identified at the time the payment is made or agreed upon.  Id.

Here, the indictment fails to meet that standard.  It alleges that Senator Menendez accepted things of value from Daibes over an extended period of time from December 2020 through 2023. SSI at ¶ 45.  While it alleges that this was done "in exchange for" Menendez's agreement and attempt to influence the pending prosecution, it does not sufficiently allege an agreement made **at the time** the Senator supposedly received the payment.  Instead, the Indictment vaguely refers to things of value given over an extended period of time without any specificity as to when the quid (or thing of value) was given in exchange for the quo (or official act).  Without any further detail, the indictment is deficient.  *Silver* requires that in order to establish bribery, the government must establish that a payment was made to influence a specific question or matter that was identified

when the payment was made (or at the time when the promise to influence was made).  Therefore, this Court should dismiss Counts One and Two as they apply to the U.S. Attorney Scheme.

## 2.     **The Qatar Investment Scheme**

The newly added allegations regarding the Qatar investment clearly run afoul of the Supreme Court's holding in *McDonnell* and must be dismissed.  None of the allegations in the SSI describe any "official act" of Senator Menendez.  As noted by the Senator in his previously filed motion, the "introduction" of Daibes to a foreign investor is a textbook example of something that is not an official act.  *McDonnell*, 579 U.S. at 573.  Nor can the Senator's expression of support for the Government of Qatar meet the definition of an official act.  *Id.* at 573. Finally, while the Indictment vaguely references some Senate resolution involving Qatar, it pointedly does not assert any official act taken by the Senator regarding that resolution.   The allegations regarding this alleged scheme cannot, as a matter of law, support a conviction under Count One or Two.

In its initial indictment, the government alleged that the cash and gold bars allegedly supplied by Daibes were bribes for Menendez's assistance in disrupting Daibes' pending criminal case.  The fact that the government now alleges that these items were given (at least in part) for the Senator's assistance with the Qatari investor belies the specificity necessary to establish a quid pro quo, i.e., that any payments were made to influence a specific question or matter that was identified when the payment was made. *Silver*, 948 F. 3d at 554.

Fed. Rule Crim. Pro. 7 requires that an indictment must set forth all of the essential facts constituting the specific offense that has been alleged.  *See also United States v. Heicklen*, 858 F. Supp. 2d 256, 262 (S.D.N.Y. 2012).  This serves two purposes.  "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal or protection against a further

prosecution for the same cause; and second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had." *U.S. v. Cruikshank*, 92 U.S. 542, 544 (1875).  An indictment that fails to sufficiently allege the essential facts is subject to dismissal under Fed. Rule Crim. Pro. 12(b).  *See generally United State v. Wexler*, 621 F. 2d 1218 (2d. Cir. 1980).

In the present case, the SSI does not allege the essential facts necessary to sustain a conviction for Counts One and Two. It must be dismissed.  For all of those reasons, as well as those articulated by the co-defendants, Counts One and Two must be dismissed as to Daibes.

**POINT TWO**

**COUNTS ONE AND TWO MUST BE DISMISSED
BECAUSE THE SSI DOES NOT
ADEQUATELY ALLEGE VENUE**

Daibes joins with the other defendants in arguing that proper venue does not exist in this matter. The present matter has virtually no relationship to the Southern District of New York other than the fact that the prosecutor's office is located there. Every significant matter that is alleged in this indictment occurred in the District of New Jersey. As will be demonstrated below, none of the essential elements of any criminal conduct occurred in the Southern District of New York. Accordingly, Daibes moves to dismiss all counts against him based on improper venue. *See* Fed R. Cr. P. 12(b).

In a criminal matter, questions of venue are of constitutional dimension. *United States v. Bezmalinovic,* 962 F. Supp. 435, 436 (S.D.N.Y. 1997). This has been the case since our nation's founding. *United States v. Saavedra,* 223 F. 2d 85, 88 (2d Cir. 2000) (discussing the historical importance and background of the venue requirement). Article III of the Constitution provides that trials for all crimes "shall be held in the State where the said Crime shall have been committed." U.S. Const. art. III, § 2, cl. 3. *See also* Sixth Amendment (providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed.").

Federal Rule of Criminal Procedure 18 codifies the defendant's right to have his prosecution heard in the district in which the offense was allegedly committed. In *United States v. Johnson*, the Supreme Court cautioned that a loose interpretation of the venue provision could lead to government forum shopping. *United States v. Johnson*, 323 U.S. 273, 275 (1944). "Questions

of venue in criminal cases [. . .] are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed." *Id*. at 276.

When a defendant brings a challenge to venue through a pre-trial motion, the government has the burden to demonstrate that the indictment alleges facts sufficient to support venue. Moreover, each count of the indictment must allege facts sufficient to justify venue. *United States v. Chow*, 993 F. 3d 125, 143 (2d Cir. 2021). "[v]enue is proper only where the acts constituting the offense—the crime's 'essential conduct elements'—took place." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020) (quoting *United States v. Ramirez*, 420 F.3d 134, 138 (2d Cir. 2005)). The acts supporting venue may not be "anterior or remote." *United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004). *See, e.g., United States v. Tzolov*, 642 F.3d 314, 319 (2d Cir. 2011) ("going to Kennedy airport and boarding flights to meetings with investors were not a constitutive part of the substantive securities fraud offense with which [defendant] was charged.").

The Second Circuit has adopted a two-step process to analyze questions of venue. *Purcell*, 967 F.3d at 186 (2d Cir. 2020). Step-one requires the Court to "seek to 'identify the conduct constituting the offense, based on the language of the statute." *Id*. (quoting *United States v. Davis*, 689 F. 3d 179, 185 (2d Cir. 2012)). Step-two requires the Court to "discern the location of the commission of the criminal acts." *Id*. (*quoting Davis*, 689 F. 3d at 185).

With respect to charges of conspiracy, the Second Circuit has stated: "venue is proper in any district in which an overt act in furtherance of the conspiracy was committed." *United States v. Royer*, 549 F. 3d 886, 896 (2d. Cir. 2008) (quoting *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir. 1994)). While this could lead to an overly expansive reading of the venue rule, the Second Circuit has also noted that in analyzing the overt acts the court should consider whether " the criminal acts in question bear 'substantial contacts' with any given venue." *Saavedra*, 223 F. 3d at

10

93 (quoting *United States v. Reed*, 773 F. 2d 477, 477 (2d. Cir. 1985)). In determining whether "substantial contacts" exist, the court should consider: "(1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding." *Id*.

In an attempt to establish venue here, the Government relies upon five overt acts allegedly committed within the Southern District of New York. First the government asserts that Nadine Menendez provided a jeweler in New Jersey with two gold bars to sell and that these gold bars were later sold by that same jeweler in Manhattan. It is noteworthy that the jeweler is not alleged to be a member of the conspiracy. Nor has the government alleged that the jeweler was directed by any conspirator to sell the gold bars in Manhattan. The ultimate decision on where to sell the gold was entirely within the control of the jeweler and exists entirely outside of the control of any individual alleged to be part of any of these conspiracies. *See Geibel*, 369 F. 3d at 697 (venue is not established in the Southern District of New York when actions that occurred in the district were "anterior and remote" the criminal conduct.). The fact that he later took action in Manhattan is simply too remote to justify venue in the Southern District of New York. Indeed, this is particularly true where all of the "essential conduct elements" took place in New Jersey. To hold otherwise would allow the government to engage in impermissible forum shopping based upon purely insignificant matters.

Next, the Government attempts to establish venue by pointing to allegations that defendant Jose Uribe asked a business associate to make a payment from a bank account that had previously been opened for that individual's business at a bank in the Bronx. *See* SSI at ¶¶ 75(b); 43(f). These allegations are even more remote than the acts of the jeweler. *See* brief submitted by defendant

Hana explaining lack of substantial contacts with New York in this transaction. This allegation cannot support venue in the Southern District of New York.

The Government then attempts to establish venue based upon a text message sent from Nadine Menendez to Jose Uribe on or about September 5, 2019, which purports to establish venue based on the allegation that it passed through a Manhattan cell tower. SSI at ¶ 75(c). The indictment is silent with respect to the context of this message. Significantly, the indictment does not establish that this unexplained message was an essential conduct element which was made in furtherance of the conspiracy. Accordingly, the Government fails to establish venue by including this random text message as an overt act.

In its last attempt to establish some substantial contact with the SDNY, the Government points to two dinners that occurred in Manhattan over the course of the entire conspiracy. These too are insufficient. The first dinner occurred on June 30, 2018, and was apparently attended by Senator Menendez, Mrs. Menendez, and Mr. Hana. See SSI at ¶¶ 75(a), 83(a) (note that Daibes was not alleged to be present). The second occurred September 21, 2019, and was attended by the same participants as the first, with the inclusion of Daibes. *Id.* at ¶¶ 75(d), 83(b). Incredibly, the indictment does not provide any insight into the subject matter or context of any discussion at these dinners other than to specify the individuals that were present. For example, the indictment does not allege that these dinners included discussions of entering into a conspiracy, the acts necessary to further the conspiracy, the exchanging of bribes, promises to exchange bribes, or any other conduct that could be construed as either furthering the conspiracy or being an essential element. The fact that three or four people who have been friends for many years happened to have dinner at a restaurant in Manhattan is totally unremarkable and without more is insufficient to establish venue.

Daibes respectfully submits that the only legitimate venue for the conspiracy counts against him and his co-defendants would be in the District of New Jersey. The conduct constituting the offense under the statute as well as the location of the commission of all relevant criminal acts occurred in New Jersey. The overt acts alleged in the indictment are wholly insufficient to force him to litigate this matter in any other district. The site of the crime, its elements and nature, the place where virtually all of the relevant conduct occurred and the suitability for accurate fact finding all lie in the District of New Jersey. The filing of the indictment in Southern District of New York constitutes impermissible forum shopping by the government and should not be permitted. Based upon the foregoing, it would be unfair to force Daibes to litigate this matter in the Southern District of New York.

Accordingly, the Indictment must be dismissed because venue in the Southern District of New York is improper.

**POINT THREE**

**COUNTS ONE AND TWO ARE DUPLICITOUS
AND MUST BE DISMISSED**

Counts One and Two are duplicitous. They incorporate five separate conspiracies into single conspiracy counts for bribery and theft of honest services. This duplicity will seriously prejudice Daibes and the other defendants in their defense of this case.

As noted previously, the SSI incorporates the first seventy paragraphs by reference into the two conspiracy counts set forth in Count One and Two. However, those first seventy paragraphs delineate five totally separate conspiracies, each of which has different actors and involves different time periods. Moreover, each of those separate schemes have different objectives and are independent of one another.   By lumping these separate conspiracies into single counts, the government has created a legal quagmire.

The first conspiracy alleged in the SSI concerns payments made to Senator Menendez and Nadine Menendez in order to obtain benefits for Egypt and certain Egyptian officials. The second conspiracy sets forth a scheme to assist Hana in regard to his company IS EG Halal. The third involves efforts to disrupt state criminal matters involving two associates of Uribe. The fourth and fifth are the two that expressly involve Daibes.[2] The fourth conspiracy alleges that Daibes gave

---

[2] While Daibes is also mentioned in the first two conspiracies (and not at all in the Uribe conspiracy), the indictment does <u>not</u> allege that Daibes agreed to participate in a "collective venture directed toward a common goal" with respect to either matter. *United State v Maldonado-Rivera*, 922 F. 2d 934, 963 (2d Cir. 1990). Rather, in each instance, the indictment alleges that Daibes assisted by providing money (SSI at ¶ 16), financial backing (*id*. at ¶ 22) or things of value (*id*. at ¶ 38). In fact, in the Egyptian aid scheme, the indictment mentions Daibes only once by name. It alleges that Hana and Nadine Menendez introduced Egyptian officials to the Senator and that Hana "with the assistance of Fred Daibes and Jose Uribe" provided hundreds of thousands of dollars to the Senator and Nadine Menendez. *Id*. at ¶ 16. But the indictment does not state that Daibes' financial assistance with respect to any of these matters was undertaken with any knowledge or agreement to proceed with a common aim or purpose. Moreover, the indictment does not allege that Daibes would benefit in any way from either of these schemes.

things of value to the Senator and Nadine Menendez in an effort to disrupt his pending federal prosecution in New Jersey. The fifth conspiracy adds a new element. The government now alleges that those same things of value were given by Daibes to the Senator in return for an introduction to an investor from Qatar.

"An indictment is duplicitous if it joins two or more distinct crimes in a single count." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). It is well settled that an indictment may not charge multiple conspiracies in a single count. *Kotteakos v. United States,* 328 U.S. at 755 (rejecting practice of charging multiple conspiracies in a single count). *See also United States v. Rigas*, 281 F. Supp. 2d 660, 664 (S.D.N.Y. 2003) In order to prove a single conspiracy involving all of the defendants in this case, the government must prove some common aim or purpose among the coconspirators and that each defendant was aware of their part in a larger organization. *United States v. Vanwort*, 887 F.2d 375, 383 (2d. Cir. 1989).   To prove a single conspiracy, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Maldonado-Rivera*, 922 F. 2d 934, 963 (2d Cir. 1990).

A duplicitous indictment is subject to dismissal where it combines separate crimes in a single count in violation of Fed. R. Crim. Pro. 8(a) and it results in prejudice to the defense. See *United States v. Sturdivant*, 244 F 3d 71, 75 (2d Cir. 2001). The present indictment clearly sets forth separate conspiracies within the same count in violation of Rule 8(a).  Moreover, it creates significant likelihood of prejudice for the defendants in this case.

---

To the extent that the indictment can be construed as alleging Daibes' knowing participation in these separate schemes, then counsel respectfully adopts and joins in the motions of co-defendants to dismiss those aspects of these separate conspiracies .

The defendant in a criminal case is fundamentally entitled to be convicted only upon a unanimous verdict from all twelve jurors.  One danger that a duplicitous indictment creates is that it threatens the defendant's right to a unanimous verdict. If the government is allowed to proceed to trial on the present indictment, there is a significant chance that it may interfere with Daibes' constitutional right to a unanimous verdict. For example, as presently crafted, the indictment could lead a jury of twelve to come to a "unanimous" vote where none of the jurors unanimously agree that the government has proven beyond a reasonable doubt any one of the alleged conspiracies. In other words, some jurors could conclude that the government has proven one of the conspiracies while other jurors disagree but conclude that the government has proven another of the conspiracies. Yet, when voting, those jurors would be able to vote to convict as to Count One or Two, even though there was no unanimity as to any single conspiracy having been proven.

Under the Constitution, a defendant is also entitled to fair notice of the specific charges that he is facing. However, when a defendant is charged in a duplicitous indictment like the present one, it becomes impossible for the defendant to know which specific conspiracy he is charged with and must defend against. *See* footnote 2 *supra*. This is particularly problematic in a case such as the present one where the government has produced an unprecedented amount of discovery that the defendant must now sift through. The defendant should not be forced to guess between which of the five schemes will threaten his liberty. *See e.g., Kotteakos v. United States*, 328 U.S. 750, 766–67 (1946) (noting burden to defendant charged in distinct transactions when preparing for joint trial charging other defendants in separate transactions).

While the indictment in the present case purports to allege a single overarching conspiracy, it actually alleges separate conspiracies with no common purpose of objective. As presently structured, the indictment alleges that the only common goal of the conspiracy incorporated into

16

both Count One and Two was the corrupt payment of bribes to the Senator and his wife. This is much too broad and general an allegation to meet the requirement of alleging a particular unifying purpose or common goal for those five separate schemes. *See e.g., United States v. Gabriel*, 920 F. Supp 498, 503 (S.D.N.Y. 1996) *aff'd*, 125 F. 3d 89 (2d Cir.1997) (finding "broad conclusory language" regarding   unifying purpose of conspiracy insufficient).  The indictment fails to sufficiently demonstrate the "mutual dependence and assistance" among the various defendants in these separate schemes. The success or failure of any one scheme had no bearing on the success of any of the other alleged schemes. *See United State v. Aracri*, supra, 968 F. 2d at 1521 (noting that mutual dependence and assistance among the defendants needed to be alleged in order to sustain single conspiracy among defendants).  *Cf. United States v. Williams*, 205 F. 3d 23, 33 (2d Cir. 2020). The present indictment fails to allege the existence of an overall scheme encompassing all of the defendants and all of the offenses in Counts One and Two.

If the Court finds that a duplicitous indictment is likely to prejudice a defendant, then the proper remedy is dismissal. *United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010). *See also United States v. Ohle*, 678 F. Supp. 2d 215, 221 S.D.N.Y. (2010) (noting that duplicitous indictment is impermissible if it prejudices defendant).  The Second Circuit has held that in certain circumstances a duplicitous indictment need not be dismissed and  the government may elect to proceed on one of the alleged conspiracies. *See United States v Sturdivant*, 244 F 3d at 79. However, the election remedy is particularly inappropriate in this case where the government has lumped five different conspiracies into single counts. The potential for prejudice to the defendants is too great and would only lead to wasted time and effort by all parties involved.

For all the foregoing reasons, as well as those set forth by the co-defendants, Counts One and Two of the SSI must be dismissed for duplicity.

## POINT FOUR

**THE COURT SHOULD SEVER DAIBES FROM THE OTHER DEFENDANTS DUE TO MISJOINDER UNDER RULE 8(b) AND/OR UNDULY PREJUDICIAL JOINDER UNDER RULE 14**

**1. Daibes should be severed from the other defendants due to misjoinder under Rule 8(b)**

Rule 8(a), entitled "Joinder of Offenses," permits joinder in a single indictment of multiple offenses if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme." Fed. R. Crim. P. 8(a).  In contrast, Rule 8(b), entitled "Joinder of Defendants," permits joinder in a single indictment of multiple defendants ***only*** if the defendants "are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). *See United States v. Attanasio*, 870 F. 2d 809, 814-15 (2d Cir. 1989).

Although the federal system favors joint trials of defendants who have been indicted together, joinder of multiple defendants must still meet the requirements of Rule 8(b).  Therefore, the Second Circuit applies a stricter standard for joinder under Rule 8(b). "Unlike Rule 8(a), Rule 8(b) does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.' Thus, though both subdivisions of Rule 8 focus on the nature of the acts constituting the alleged offenses, 8(b) provides a more restrictive test when multiple defendants are involved." *United States v. Turoff,* 853 F.2d 1037, 1042–43 (2d Cir.1988). Moreover, a defendant challenging joinder under Rule 8(b) need not demonstrate prejudice.  "Unless the standards set out in Rule 8(b) are met, a motion for severance should be granted even absent a showing of prejudice." *United States v. Feyrer,* 333 F.3d 110, 113 (2d Cir. 2003) . *See also United States v. Eufrasio*, 935 F.2d 553, 567  (3rd Cir. 1991), *cert. denied*, 112 S. Ct. 340 (1991); *United States v. Lane*, 474 U.S. 438, 449 n.12 (1986)

("Rule 8(b) [] requires the granting of a motion for severance unless its standards are met, even in the absence of prejudice"); *United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982) ("If multiple defendants are improperly joined under Rule 8(b) because they are charged with offenses that are unrelated, then they are to be considered as prejudiced by that fact and the trial judge has no discretion on the question of severance.  Severance in such a case is mandatory."); *United States v. Bledsoe*, 674 F.2d 647, 654 (8th Cir. 1982) ("Under [Rule] 8(b), the district court has no discretion to deny severance of misjoined defendants; we have held misjoinder of defendants is inherently prejudicial."); Wright, *Federal Practice and Procedure* (1999) § 144 at 90 ("If there has been misjoinder, the trial court has no discretion to deny the [severance] motion.").

Although defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count, ***all*** of the crimes charged must arise from "the same series of acts or transactions" in which ***all*** of the defendants participated. *Attanasio*, 870 F. 2d 809, at 814-15 (see also *United States v. Giampa*, 904 F. Supp. 235, 263 (D.N.J. 1995) ("Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all of the charged offenses even though every defendant need not have participated in or be charged with each offense.") (citation and internal quotation marks omitted); Wright, *supra*, § 144 at 59 ("All the defendants must have participated in the series of acts, and all of the charges joined must arise out of that series of acts.").  The acts must be "unified by some substantial identity of facts or participants" or "arise out of a common plan or scheme."  *Attanasio*, 870 F2d at 815. *See also  United States v. Cervone,* 907 F.2d 332, 341 (2d Cir.1990) .

The second superseding indictment does not sufficiently allege acts unified by a substantial identity of facts and participants nor does it sufficiently allege that those acts arise out of a common plan or scheme.

**A.  The alleged acts are not unified by a substantial identity of facts or participants**

In order to determine   whether an indictment alleges substantial identity of facts or participants, the Second Circuit has inquired whether "a reasonable person would easily recognize the common factual elements that permit joinder...." *Turoff,* 853 F.2d at 1044. Joinder is improper where "[c]ommission of one of the offenses neither depended upon nor necessarily led to the commission of the other" and "proof of the one act neither constituted nor depended upon proof of the other." *United States v. Halper,* 590 F.2d 422, 429 (2d Cir.1978).

In the present case, the facts involving Uribe and Menendez scheme are not unified by a substantial identity of facts or participants. The two schemes are completely unrelated. Other than the Senator there is no commonality among the participants. The success of that scheme did not in any way depend upon or lead to the commission of the alleged acts involving Daibes and Menendez.  Nor does the evidence relating to either of those unrelated conspiracies depend upon proof of the other. **Proof of those separate schemes cannot be classified as being  "indispensable for a full understanding of the other."** *Turoff,* 853 F.2d at 1044. Similarly, the indictment does not allege that Daibes had any significant role in the those allegations related to Hana. The evidence relevant to the charges involving Daibes would not be unnecessarily duplicative of the evidence to be offered against Hana or Uribe. *See  Feyrer,* 333 F.3d at 114.

In short, the alleged conspiracies involving Daibes are not unified by a substantial identity of facts or participants with the other alleged schemes.

**B.  The alleged acts do not arise out of a common plan or scheme**

 Nor does the indictment sufficiently allege that the acts arise out of a common plan or scheme. As noted in Point 3 *supra*, the indictment in this case has improperly grouped multiple conspiracies into a single overarching conspiracy. In analyzing the present indictment under Rule

8(b), this Court should consider the lack of commonality between those separate conspiracies. For example, there is no allegation that Daibes was in any way aware of the alleged conspiracy involving an effort to disrupt the New Jersey prosecution of the associates of Uribe. The indictment does not allege that the two even knew one another. Knowledge of the other conspiracy is at least one "indicator of whether or not there is a common scheme or purpose." *See United States v. Ohle,* 678 F.Supp.2d 215, 225 (S.D.N.Y.2010). In the present case, all of the alleged conspiracies involve Senator Menendez and separate individuals.  A "plan cannot be called 'common' [where a single defendant] is the only one alleged to be aware of it." *United States v. Menashe,* 741 F.Supp. 1135, 1138 (S.D.N.Y.1990).

"Whether the joinder of defendants in two conspiracies is warranted must be determined on a case-by-case basis." *United States v. Rittweger,* 524 F.3d 171, 178 (2d Cir.2008). In the present case, there is simply not enough facts alleged that would demonstrate that the acts of Daibes arise out of a common plan or scheme involving defendants Uribe and Hana. For all of the foregoing reasons, it is respectfully submitted that this Court should grant Daibes' motion for severance under Rule 8(b).

## 2. Alternatively, Daibes should be severed from the other defendants due to prejudicial joinder under Rule 14

Even assuming that a defendant has been properly joined under Rule 8(b), Fed. R. Crim. Pro. 14 provides relief from prejudicial joinder. "If the joinder of offenses or defendants in an indictment … for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Id. "Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either a defendant or the Government." *Zafiro v. United States,* 506 U.S. 534, 538 (1993). The

Supreme Court has emphasized that a district judge must carefully and constantly assess the likelihood of prejudice: "the trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (2003). The decision to sever under Rule 14 is committed to the sound discretion of the trial judge. *United States v. Chang An-Lo*, 851 F. 2d 547, 556 (2d Cir. 1988).

The Supreme Court has held that severance is appropriate when there is a serious risk that a joint trial might compromise a defendant's right to a fair trial or prevent the jury from making a reliable judgment on guilt or innocence. *Zafiro*, 506 U.S. at 539. The Court provided a non-exclusive list of instances where unfair prejudice could arise. "Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. ... When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Id.*

The SSI threatens Daibes right to a fair trial in a number of ways. By alleging five separate and distinct schemes involving the Senator at the hub of each conspiracy, the government has created a serious risk of prejudice and confusion of issues. Daibes has no connection whatsoever to the Uribe scheme involving separate criminal matters in New Jersey. Neither has the government alleged any involvement by Daibes in the FARA count. And the government has not alleged any substantial involvement by Daibes in the ISEG halal scheme or Egyptian aid scheme. If Daibes is tried with all of the other defendants regarding all of these other alleged schemes, there is a serious risk that there will be prejudicial spillover when the jury has to parse through all of the evidence.

The "risk" of unfair prejudice resulting from such a joint trial is manifest, especially where, as here, the defendants "have markedly different degrees of culpability []." *Zafiro*, 506 U.S. at 539. As one Court of Appeals explained:

> [J]oint trials do often present the danger of prejudice to defendants Evidence concerning the most guilty defendants might, in the eyes of the jury, implicate less guilty defendants by association. The sheer confusion resulting from trying numerous defendants together may also prejudice defendants; the jury may not be able to keep track of which evidence applies to which defendants, and may end up lumping all the defendants together.

*United States v. Sophie*, 900 F.2d 1064, 1083 (7th Cir. 1990). *See also United States v. McLain*, 823 F.2d 1457, 1467 (11th Cir. 1987) (reversing overarching RICO conviction based on erroneous refusal to sever defendant where "the RICO count contained two separate conspiracies, [] the drug-related activities were unconnected to the loansharking and bookmaking conspiracy, and [defendant] was not connected to the drug related conspiracy"); *United States v. Bertolotti*, 529 F.2d 149, 157 (2nd Cir. 1975) (reversing overarching conspiracy conviction where evidence established separate conspiracies by finding "inherent prejudice" in subjecting each defendant "to voluminous testimony relating to unconnected crimes in which he took no part"; explaining that "[t]he possibilities of spill-over effect from testimony on these transactions are patent when the number of conspiracies, the number of defendants and the volume of evidence are weighed against the ability of the jury to give each defendant the individual consideration our system requires").

In the present case, the government has alleged a wheel conspiracy without any rim that joins the spokes of the wheel.

> The "wheel" conspiracy describes an arrangement of co-conspirators around a central figure, or "hub," who deals separately with peripheral figures, or "spokes." Each of the spokes is a member of the conspiracy even though they may not have any direct relations with one another. These peripheral members *must have been aware of one another* and have done something in furtherance of a single, illegal, enterprise, however, or it is said the conspiracy lacks "the rim of the wheel to enclose the spokes."

*United States v. Castro*, 776 F.2d 1116, 1124 n.4 (3rd Cir. 1985) (*quoting Kotteakos v. United States*, 328 U.S. 750, 755) (emphasis added); *see generally United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014).

To prove a single conspiracy, "the government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Maldonado-Rivera*, 922 F. 2d 934, 963 (2d Cir. 1990). Essentially, each defendant must have participated in the alleged enterprise with a consciousness of its general nature and extent. *United States v. Rosa*, 11 F.3d 315, 340 (2d. Cir. 1993) (abrogated on other grounds by *United States v. Feliz*, 467 F. 3d 227, 230 (2d. Cir. 2006). In the Second Circuit, a "single conspiracy may be found where there is 'mutual dependence and assistance' among the participants, a common aim or purpose … of permissible inference from the nature and scope of the operation, that each actor was aware of his part in a larger organization where others performed similar roles equally important to the success of the venture." *United States v. Vanwort*, 887 F.2d 375, 383 (2d. Cir. 1989) (*quoting Bertolotti*, 529 F. 2d at 154).

In the present indictment, the government has not alleged any facts that would lead to a permissible inference that Daibes shared a common aim or purpose with the other defendants nor has it alleged that he was aware of his part in some larger overarching scheme.

Moreover, this prejudicial spillover will be exponentially heightened when the jury hears evidence that the Senator and his wife committed extortion under color of right (Count Three) and conspired to act as an agent of behalf of the Government of Egypt. There is a substantial risk that the jury may be unduly influenced by allegations of alleged acts of corrupt foreign influence in this case. Those allegations are particularly controversial and likely to inflame the emotions of jurors. The fact that Daibes speaks Arabic and shares a similar cultural background to some of the

participants in these separate schemes only further bolsters this notion. To avoid such prejudice, the Court should sever those charges involving Daibes from the other defendants. Any such joint trial would prove inherently prejudicial to Daibes and would violate his "right not to be tried *en masse* for the conglomeration of distinct and separate offenses" charged against the other defendants. *Kotteakos*, 328 U.S. 775.

Ironically, the similarity between the allegations in U.S. Attorney scheme involving Daibes and the New Jersey criminal cases involving Uribe's associates creates another area of unfair prejudice. The fact that they are so similar, yet entirely separate and distinct, creates an additional risk of substantial prejudice. The alleged goal of the Daibes conspiracy would be to facilitate a favorable resolution for his federal criminal matter using Senator Menendez's influence. The goal of the allegations leveled at Uribe would be to resolve those state criminal matters favorably through Senator Menendez's influence in New Jersey. The fact that both allegedly involve Menendez seeking to achieve entirely separate goals does not create a unified conspiracy. The schemes are wholly distinct. Indeed, the government does not even allege that Daibes or Uribe were even aware of one another or acted in furtherance of a single illegal enterprise.

For all the foregoing reasons, it is respectfully submitted that the Court should grant Daibes motion for a severance.

25

<u>**POINT FIVE**</u>

**DAIBES JOINS IN THE MOTIONS OF
ALL CODFENDANTS AND RESERVES THE RIGHT
TO FILE ADDITIONAL MOTIONS**

Daibes hereby joins in the motions of all codefendants challenging the sufficiency of the indictment. As the Court is aware, the government has produced a massive amount of discovery in this case. With limited resources, all counsel are working toward an expeditious review of that discovery. However, counsel respectfully requests permission to file additional motions in the interest of justice if the ongoing review of this discovery merits the same.

26

## **CONCLUSION**

As set forth above, Daibes respectfully submits that the indictment must be dismissed.  In the alternative, a severance should be granted.


Dated:  January 15, 2024                    Respectfully submitted,

                                            By: */s/ Timothy M. Donohue*
                                                 Timothy M. Donohue
                                                 ARLEO & DONOHUE, LLC
                                                 622 Eagle Rock Avenue
                                                 West Orange, NJ  07052
                                                 Tel. (973) 736-8660
                                                 Fax. (973) 736-1712

                                                 Attorney for Defendant,
                                                 Fred Daibes

27