## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ROBERT MENENDEZ, *et al.*,

Defendants.

Criminal Action No. 23-490 (SHS)

*Document Electronically Filed*

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT WAEL HANA'S
## OMNIBUS PRETRIAL MOTIONS

---

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.    THE BRIBERY AND HONEST SERVICES WIRE FRAUD COUNTS (COUNTS 1, 2, 6, 7, AND 9) MUST BE DISMISSED. ....................................... 2

        A.    The Fourth Iteration Of The Indictment Still Fails To Allege An "Official Act." ................................................................................................. 3

        B.    The Fourth Version Of The Indictment Still Fails To Allege A *Quid Pro Quo*. ................................................................................................................ 8

    II.    COUNT 15 OF THE INDICTMENT MUST BE DISMISSED. .......................... 12

    III.    THE INDICTMENT IS DUPLICITOUS OR, IN THE ALTERNATIVE, MULTIPLICITOUS, REQUIRING AN ELECTION BETWEEN CONSPIRACY COUNTS ............................................................................................................. 15

        A.    Counts 1, 2, And 15 (Formerly Count 4) Remain Impermissibly Duplicitous And Must Be Dismissed. ........................................................ 15

        B.    In The Alternative, Counts 1, 2, And 15 Are Multiplicitous. ................... 20

        C.    Counts 6 And 7 Are Impermissibly Duplicitous And Must Be Dismissed. ................................................................................................... 21

    IV.    THE FOURTH VERSION OF THE INDICTMENT STILL DOES NOT ADEQUATELY ALLEGE VENUE. ................................................................... 24

CONCLUSION ................................................................................................................. 32

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*McDonnell v. United States,*
   579 U.S. 550 (2016) ............................................................................................ *passim*

*Ocasio v. United States,*
   578 U.S. 282 (2016) ...............................................................................................4

*United States v. Anderson,*
   509 F.2d 312 (D.C. Cir. 1974) .........................................................................21, 22

*United States v. Aracri,*
   968 F.2d 1512 (2d Cir. 1992) ..............................................................................21

*United States v. Beech-Nut Nutrition Corp.,*
   871 F.2d 1181 (2d Cir. 1989) ..........................................................................29, 31

*United States v. Bezmalinovic,*
   962 F. Supp. 435 (S.D.N.Y. 1997) .......................................................................29

*United States v. Birdsall,*
   233 U.S. 223 (1914) ...............................................................................................7

*United States v. Boyland,*
   862 F.3d 279 (2d Cir. 2017) ..................................................................................6

*United States v. Cabrales,*
   524 U.S. 1 (1998) .................................................................................................28

*United States v. Carrano,*
   340 F. Supp. 3d 388 (S.D.N.Y. 2018) (Stein, J.) .................................................14

*United States v. Conley,*
   826 F. Supp. 1536 (W.D. Pa. 1993) .....................................................................23

*United States v. Geibel,*
   369 F.3d 682 (2d Cir. 2004) ................................................................................28

*United States v. Jefferson,*
   289 F. Supp. 3d 717 (E.D. Va. 2017) ....................................................................6

*United States v. Khalupsky,*
   5 F.4th 279 (2d Cir. 2021) .............................................................................14, 31

*United States v. Kirk Tang Yuk*,
   885 F.3d 57 (2d Cir. 2018)..................................................................................26, 27

*United States v. Lech*,
   161 F.R.D. 255 (S.D.N.Y. 1995) ...........................................................................18

*United States v. Margiotta*,
   646 F.2d 729 (2d Cir. 1981)...................................................................................23

*United States v. Marlinga*,
   No. 04-cr-80372, 2005 WL 513494 (E.D. Mich. Feb. 28, 2005) ...........................19

*United States v. Martin*,
   411 F. Supp. 2d 370 (S.D.N.Y. 2006)....................................................................14

*United States v. Munoz-Franco*,
   986 F. Supp. 70 (D.P.R. 1997)..........................................................................20, 23

*United States v. Murray*,
   618 F.2d 892 (2d Cir. 1980)........................................................................18, 21, 23

*United States v. Olmeda*,
   461 F.3d 271 (2d Cir. 2006)...................................................................................18

*United States v. Pleasant*,
   125 F. Supp. 2d 173 (E.D. Va. 2000) ....................................................................23

*United States v. Praddy*,
   725 F.3d 147 (2d Cir. 2013).....................................................................................4

*United States v. Purcell*,
   967 F.3d 159 (2d Cir. 2020)...................................................................................28

*United States v. Ramirez*,
   420 F.3d 134 (2d Cir. 2005)...................................................................................28

*United States v. Reichberg*,
   5 F.4th 233 (2d Cir. 2021) .......................................................................................9

*United States v. Rigas*,
   281 F. Supp. 2d 660 (S.D.N.Y. 2003)....................................................................18

*United States v. Rigas*,
   605 F.3d 194 (3d Cir. 2010)...................................................................................21

*United States v. Rodriguez-Moreno*,
   526 U.S. 275 (1999)...............................................................................................28

*United States v. Rommy*,
  506 F.3d 108 (2d Cir. 2007)..........................................................................27

*United States v. Silver*,
  864 F.3d 102 (2d Cir. 2017)............................................................................7

*United States v. Silver*,
  948 F.3d 538 (2d Cir. 2020)...........................................................8, 9, 10, 12

*United States v. Sturdivant*,
  244 F.3d 71 (2d Cir. 2001)............................................................................21

*United States v. Tingle*,
  183 F.3d 719 (7th Cir. 1999) .........................................................................25

*United States v. Tutein*,
  122 F. Supp. 2d 575 (D.V.I. 2000) ................................................................21

*United States v. Tzolov*,
  642 F.3d 314 (2d Cir. 2011)...........................................................25, 26, 27, 28

*United States v. Van Hise*,
  No. 12-cr-847, 2017 WL 3425750 (S.D.N.Y. Aug. 8, 2017), *aff'd sub nom.*
  *United States v. Asch*, 775 F. App'x 15 (2d Cir. 2019) ...................................3

*United States v. Vanhise*,
  797 F. App'x 618 (2d Cir. 2020) ......................................................................3

**Statutes**

18 U.S.C. § 201..............................................................................3, 5, 21, 22

18 U.S.C. § 219.......................................................................................13, 14

18 U.S.C. § 666.............................................................................................21

18 U.S.C. § 1343.........................................................................................3, 5

18 U.S.C. § 3232...........................................................................................25

22 U.S.C. § 611......................................................................................13, 14

**Rules**

Fed. R. Crim. P. 8(a) ...................................................................................21

Fed. R. Crim. P. 18 ......................................................................................25

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 3 ..............................................................................................25

United States Constitution Debate Clause ......................................................................19

## PRELIMINARY STATEMENT

The Third Superseding Indictment in this case—the fourth indictment overall—attempts to address certain of the shortcomings to which the Defendants pointed in their first set of pretrial motions. But, like its predecessors, and despite expanding on the eve of trial from 4 counts to 16, the new indictment fails to include charges that pass legal, and in some regards, constitutional muster. Thus, it remains the case that the conspiracy charges are not only duplicitous (or if not, necessarily multiplicitous) but more problematically, do not set forth an offense because they do not allege the necessary official acts, and certainly do not demonstrate the required *quid pro quo* that the law, as refined over the last century by the United States Supreme Court, requires. And the new substantive counts, which are subject to even more rigorous pleading standards than are conspiracies, fail on the same grounds even more obviously, *a fortiori.*

With regard to the allegation that defendant Wael Hana participated in a conspiracy to have defendant Senator Robert Menendez act as an agent of Egypt, the Third Superseding Indictment does not even seek to address the arguments raised in Mr. Hana's prior motion to dismiss, arguments which are, accordingly, not repeated here, though they continue to be pressed. Beyond this, the new charging instrument also continues to fail to identify which or who of several referenced Egyptian entities and persons is the "foreign principal" who purportedly sought to control or direct Senator Menendez's actions, a fatal defect (or at best for the government, one that requires a bill of particulars).

Finally, although it has added new allegations specifically to address the issue, the new Indictment continues to fail to establish venue, certainly with regard to each defendant (and Mr. Hana in particular) for each count.

For the reasons set forth in Mr. Hana's prior moving and reply brief, and those discussed below in this shorter supplemental brief, Mr. Hana's motions to dismiss should be granted and the

1

case against him dismissed, or the alternative relief he seeks provided. The alternative will be a criminal trial that will not only be legally unsupportable but that threatens to be fundamentally unfair and deeply problematic in terms of its administration.

## ARGUMENT[1]

### I.    THE BRIBERY AND HONEST SERVICES WIRE FRAUD COUNTS (COUNTS 1, 2, 6, 7, AND 9) MUST BE DISMISSED.

Mr. Hana's prior briefing explains in detail the deficiencies that plagued the prior Second Superseding Indictment (ECF No. 115) with respect to the conspiracy charges against him for bribery and honest services wire fraud. *See* Hana Br. at 3-30; Hana Reply Br. at 2-20. The new, fourth iteration of the Indictment (ECF No. 238) includes nearly identical conspiracy charges, which appear in Count 1 ("Conspiracy to Commit Bribery") and Count 2 ("Conspiracy to Commit Honest Services Wire Fraud"), and adds substantive charges as Count 6 ("Bribery - Actions to Benefit HANA and Egypt"), Count 7 ("Honest Services Wire Fraud - Actions to Benefit HANA and Egypt"), and Count 9 ("Honest Services Wire Fraud - Actions to Benefit Uribe and Uribe's Associates"), but these are all premised upon the same factual allegations as had been included in the Second Superseding Indictment. Indeed, the Government has added no new factual allegations with respect to Mr. Hana. *Compare* S2 Ind. ¶¶ 1-67, with Ind. ¶¶ 1-67. Thus, Mr. Hana's prior briefing applies equally to Counts 6, 7, and 9. Additionally, because the Indictment adds no new

---

[1] Hereinafter, unless otherwise noted, the Third Superseding Indictment (ECF No. 238) is referred to as the "Indictment," and citations to the same take the form "Ind."; and citations to the Second Superseding Indictment (ECF No. 115) take the form "S2 Ind." Citations to Mr. Hana's Memorandum of Law in Support of his Omnibus Pretrial Motions (ECF No. 143) take the form "Hana Br."; citations to Mr. Hana's Reply Memorandum of Law in Further Support of his Omnibus Pretrial Motions (ECF No. 186) take the form "Hana Reply Br."; and citations to the Government's Omnibus Memorandum of Law in Opposition to the Defendants Pretrial Motions (ECF No. 180) take the form "Opp." Additionally, unless otherwise noted, all internal citations and quotation marks are omitted from parenthetical citations.

allegations as to Mr. Hana, a bill of particulars remains necessary in connection with Counts 1, 2, 6, 7, and 9, for the reasons set forth in Mr. Hana's prior briefing.  *See* Hana Br. at 30-38; Hana Reply Br. at 56-63.

Now, Mr. Hana must address the substantive bribery and honest services wire fraud charges; these also fail to allege a crime.  Indeed, the deficiencies of the conspiracy count are only more acute with regard to these substantive offenses which are, as a matter of law, generally more difficult to prove than is conspiracy.  *See United States v. Van Hise*, No. 12-cr-847, 2017 WL 3425750, at *27 (S.D.N.Y. Aug. 8, 2017), ("The elements of conspiracy are generally more easily proven than the elements of either a substantive offense or an attempt, the latter of which typically requires proof that a defendant took a 'substantial step' toward completing a crime."), *aff'd sub nom. United States v. Asch*, 775 F. App'x 15 (2d Cir. 2019), and *aff'd sub nom. United States v. Vanhise*, 797 F. App'x 618 (2d Cir. 2020).  Thus, Mr. Hana's arguments directed toward the conspiracy elements apply with even more force to the substantive counts, which are evaluated under a more exacting standard.  *See id.*

### A.    The Fourth Iteration Of The Indictment Still Fails To Allege An "Official Act."

To establish an "official act" for purposes of the federal bribery statute, 18 U.S.C. § 201, and honest services fraud, 18 U.S.C. § 1343, the Government must satisfy the standard established by the United States Supreme Court in *McDonnell v. United States*, 579 U.S. 550, 567 (2016). First, the Government must identify a "question, matter, cause, suit, proceeding or controversy" that "may at any time be pending" or "may by law be brought" "before a public official" akin to "a lawsuit before a court, a determination before an agency, or a hearing before a committee" [hereinafter "question or matter element"].  *Id.* at 567, 569.  Second, the Government must establish that "the public official made a decision or took an action 'on' that question, matter,

cause, suit, proceeding, or controversy, or agreed to do so" [hereinafter "decision or action element"], a requirement that can only be satisfied by something more than "[s]etting up a meeting, talking to another official, or organizing an event (or agreeing to do so)." *Id.* at 567, 574; *see also* Hana Br. at 11-14 (articulating the *McDonnell* standard).

In his prior briefing, Mr. Hana demonstrated why the factual allegations in the Second Superseding Indictment were insufficient to charge conspiracy to violate either the federal bribery statute or honest services fraud because those factual allegations do not establish, as a matter of law, that Senator Menendez promised to take or undertook any "official acts" within the meaning of *McDonnell*.  Hana Br. at 11-19; Hana Reply Br. at 7-12.  Significantly, with respect to the conspiracy counts, which were then the only charges against Mr. Hana, the Government was required to allege that the Defendants agreed to engage in conduct that, if completed, would be unlawful.  *United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013).  In other words, whether the Government charged that Senator Menendez agreed to undertake an official act or whether he did undertake such act, the Government had to allege actions that, if completed, would satisfy *McDonnell*'s "official act" standard.  *Id.*; *see also Ocasio v. United States*, 578 U.S. 282, 287 (2016) ("[T]he fundamental characteristic of a conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" (alteration in original)).  Thus, for the same reasons the conspiracy counts fail to allege an agreement to perform an official act, the substantive counts fail to allege a promise to perform an official act—as both require some conduct that would constitute an official act.  *See Praddy*, 725 F.3d at 153; *Ocasio*, 578 U.S. at 287.

In its opposition to Mr. Hana's motion to dismiss the Second Superseding Indictment, the Government argued that, because a single conspiracy was charged, "not all acts promised or agreed

to be taken, or in fact taken, in connection with or furtherance of the scheme must themselves be official acts" so long as there is at least one official act or promise of an official act.  Opp. at 54. However, as Mr. Hana explained in his moving brief, none of the allegations involving him concerned a promise or agreement to undertake an "official act" under *McDonnell*, and thus the conspiracy charges could not stand as against him.  Hana Br. at 11-19.  Even more so with respect to the present Indictment, the failure to allege any official acts is even more fatal to the new separate substantive counts, each of which must allege a discrete official act, standing on its own.

Count 6 and 7 charge Mr. Hana with bribery under § 201 and wire fraud under § 1343, respectively, and allege that he "gave, offered, and promised things of value," to Senator and Ms. Menendez, in exchange for the Senator's "agreement and promise to use, and/or the actual use of, his official authority and influence to attempt to cause, through advice and pressure, the USDA to act favorably toward a business monopoly granted by the Government of Egypt to HANA, and to take other actions that benefited the Government of Egypt, including with respect to U.S. military aid."[2]  Ind. ¶¶ 91, 93.  Leaving aside the duplicitous natures of these charges, as discussed below, *see infra* at Section II.C, Mr. Hana's moving brief made clear that any action by Senator Menendez with respect to the USDA was not an "official act" under *McDonnell* because, even accepting the allegations of the Indictment as true, they failed to include the first "question or matter" element. Hana Br. at 17-18.  And that is because, as previously discussed, IS EG Halal's status was not a matter pending before any U.S. public official, department or agency, *see* Ind. ¶ 24 (alleging that the "Government of Egypt granted" Mr. Hana's halal contract), and any alleged outreach to the USDA regarding a private contract with a foreign nation cannot constitute a "question or matter"

---

[2] The Government concedes that the *McDonnell* standard applies to both bribery and wire fraud counts.  *See* Opp. at 32 n.6.

pending before a public official akin to "a lawsuit before a court, a determination before an agency, or a hearing before a committee," as required under *McDonnell*. *See* 579 U.S. at 567. Nor does the new Indictment allege, any more than the prior one did, that as the Government argued in its brief but did not include in the charging document, that Official-1 personally signed a request that "Egypt suspend or reverse course," Opp. at 58, in a way that satisfies *McDonnel*'s requirement that the "'question, matter, cause, suit, proceeding or controversy' must be more specific and focused than a broad policy objective," 579 U.S. at 578. In sum, the new Indictment still fails to allege the essential question or matter element with respect to Senator Menendez's alleged phone call to the USDA. Indeed, as Mr. Hana showed in his moving brief, merely contacting another government agency does not, as a matter of law, meet the decision or action element. *See United States v. Boyland*, 862 F.3d 279, 290 (2d Cir. 2017) (contacting another government agency does not constitute an official act).

Mr. Hana also set forth why the alleged actions to benefit Egypt do no satisfy the *McDonnell* standard. *See* Hana Br. at 15-17. Even more specifically, the allegations regarding military aid fail to state a bribery offense because the Senator's mere discussion of foreign military sales and funding with Mr. Hana and others is not sufficient under *McDonnell* to establish the required decision or action element (or a promise to take a decision or action). *Id.*; *see also United States v. Jefferson*, 289 F. Supp. 3d 717, 736-37 (E.D. Va. 2017) (meeting with military officials in an effort to gain approval of testing certain technology was not an official act). For these reasons, Counts 6 and 7 fail to state an offense and must be dismissed.

Count 9 charges Mr. Hana with honest services wire fraud and alleges that Mr. Hana gave things of value to Senator and Ms. Menendez in exchange for the Senator's promise to use his "official authority and influence to attempt to cause, through advice and pressure, the Office of the

New Jersey Attorney General to resolve the criminal prosecution of the New Jersey Defendant favorably to the New Jersey Defendant and to resolve the criminal investigation involving the New Jersey Investigative Subject favorably to the New Jersey Investigative Subject." Ind. ¶ 97. But as Mr. Hana set forth in his prior briefing, *see* Hana Br. at 18-19 (discussing the alleged scheme to "disrupt" two New Jersey criminal matters), the Indictment fails to sufficiently allege that the Senator took an official action or decision on the two criminal matters because it charges only that he contacted Official-2 in an attempt to advise and pressure him regarding that matter, *see* Ind. ¶ 44(b). The Government alleges nothing about the substance or context of the conversations and, under *McDonnell*, simply "[s]etting up a meeting" or "talking to another official" is not enough. *See* 579 U.S at 567, 574. Further, as Mr. Hana also showed, "advice" as official action is best understood as occurring between superiors and subordinates, which is not the relationship between Senator Menendez and Official-2. *See* Hana Br. at 19 (citing *McDonnell*, 579 U.S. at 572 (noting that the Supreme Court in *United States v. Birdsall*, 233 U.S. 223, 234 (1914), found "official action on the part of subordinates where their superiors would necessarily rely largely upon the reports and advice of subordinates . . . who were more directly acquainted with the facts and circumstances of particular cases")). Additionally, the factual allegations in the Indictment do not establish that the Senator "pressured" Official-2 because it alleges nothing about the substance of the conversation. *See id.* (citing *United States v. Silver*, 864 F.3d 102, 120-21 (2d Cir. 2017) ("*Silver I*") (noting that evidence of exerting pressure requires some action, such as threatening to withhold funding)). For these reasons, Count 9 fails to state an offense as well.

In sum, the substantive counts fail for the very same reason the conspiracy counts fail—they do not allege any promised or completed actions that would constitute an "official act" under *McDonnell*. Therefore, Counts 1, 2, 6, 7, and 9 must be dismissed.

**B.    The Fourth Version Of The Indictment Still Fails To Allege A *Quid Pro Quo*.**

In addition to not alleging any official act by Senator Menendez, the Indictment is also deficient because it still fails to charge that there was an agreement whereby Senator Menendez would accept the allegedly corrupt payments in exchange for influencing a particular question or matter. This *quid pro quo* is an essential element of each of the bribery and honest services wire fraud offenses charged in Counts 1, 2, 6, 7, and 9.

Following *McDonnell*, the law is clear that the *quid pro quo* element of federal bribery and honest services fraud requires that the Government (1) "identify" the "particular *question* or *matter*" that the official (here, Senator Menendez), allegedly promised to, or did, influence; and (2) allege that the official agreed to influence that "particular question or matter" at the time he accepted, or agreed to accept, the purportedly corrupt payment or bribe. *United States v. Silver*, 948 F.3d 538, 553, 556 (2d Cir. 2020) ("*Silver II*") (emphasis in original); *id.* at 556 ("[A]t the time the bribe is made, the promised official act must relate to a properly defined question, matter, cause, suit, proceeding or controversy."). Critically, and absent here, with respect to Counts 1 and 2, the Indictment must allege an agreement between Mr. Hana and Senator Menendez to have Senator Menendez influence (or promise to influence) particular questions or matters at the time he allegedly accepted (or agreed to accept) the corrupt payments or bribes; thus, with respect to Counts 6, 7, and 9, the Indictment must allege that Senator Menendez did influence (or promise to influence) particular questions or matters at the time he accepted (or agreed to accept) the corrupt payments or bribes. *Id.* at 553 ("[T]he public official must, at minimum, promise to influence a 'focused and concrete' 'question or matter.'" (quoting *McDonnell*, 579 U.S. at 569-70)). Nor is this *quid pro quo* requirement excused in circumstances in which the Government proceeds with

an "as the opportunities arise" theory of bribery.[3]  *See United States v. Reichberg*, 5 F.4th 233, 247 (2d Cir. 2021) (In light of *McDonnell*, the "as opportunities arise" theory requires that "at the time of the payment," the official "understood that [he] was expected as a result of the payment to exercise particular kinds of influence . . . as specific opportunities arise.").

As explained in Mr. Hana's prior briefs, Counts 1 and 2 fail to identify any *quid pro quo*— *i.e.*, any purported agreement by Senator Menendez to influence a particular question or matter at the time he allegedly accepted or agreed upon payment from Mr. Hana.  *See* Hana Br. at 3-11, 20-30; Hana Reply Br. at 2-5, 12-20.  Instead, the Indictment employs a "kitchen-sink approach," spreading different alleged payments and different alleged "official acts" over 73 paragraphs of the Indictment—which does not satisfy the essential element that Senator Menendez agreed to accept corrupt payments knowing at the time he did so that he was being asked to influence a focused, concrete, and particular question or matter.  *See Silver II*, 948 F.3d at 556, 577.  Thus, as a matter of law, Counts 1 and 2 fail to allege an offense.

Counts 6, 7, and 9 are no different.  Counts 6 and 7 allege that Mr. Hana gave Senator Menendez an extremely broad array of things of value—"cash, gold, checks, personal property, meals, transportation, promises of carpeting services, and promises of the purchase of an automobile"—in exchange for supposedly influencing multiple, unrelated actions:  Senator Menendez contacting the USDA and taking "other actions that benefited the Government of Egypt, including with respect to U.S. military aid."  Ind. ¶¶ 91, 93.  Similarly, Count 9 asserts that Mr. Hana provided Senator Menendez with "cash, payments toward the Mercedes-Benz Convertible,

---

[3] As stated in Mr. Hana's prior briefs, it is Mr. Hana's position that the "as the opportunities arises" theory is legally invalid following *McDonnell*.  *See* Hana Br. at 23-24.  Nevertheless, because the Second Circuit has continued to recognized its validity, at least to a limited extent, *see Silver II*, 948 F.3d at 553, the theory is addressed here.

and meals" in exchange for Senator Menendez allegedly taking action in connection with the scheme to disrupt the New Jersey criminal matters. *Id.* ¶ 97.

Even accepting those allegations as true (though they are not), they are insufficient, strictly as a matter of law. As an initial matter, any alleged promise to take unidentified "other actions that benefited the Government of Egypt" is plainly insufficient to satisfy the *quid pro quo* requirement under *McDonnell* because it is "so lacking in definition or specificity that it amounts to no promise at all." *See Silver II*, 948 F.3d at 557 ("[A] promise to perform some act to create jobs or lower taxes, or to benefit the payor, without more, cannot be understood to refer to a formal exercise of governmental power that is similar in nature to a cause, suit, proceeding or controversy. . . . More pointedly, such a promise is so lacking in definition or specificity that it amounts to no promise at all."). Additionally, although Mr. Hana does not dispute that a *quid pro quo* may involve multiple corrupt payments and multiple official acts, the Indictment must still allege that Senator Menendez agreed to accept those alleged corrupt payments specifically in order to influence a focused, concrete, and particular question or matter. *See id.* at 556, 577. No such allegation is included here; just as with Counts 1 and 2, the Indictment instead employs a "kitchen-sink approach" in Counts 6, 7, and 9, listing a number of purported *quids* and a number of alleged *quos*, but never tying them together with the required *pro*.

For example, in Counts 6 and 7, the Indictment states that Mr. Hana promised "checks" to Senator Menendez without any additional information. Thus, even after four tries, the Indictment remains entirely unclear whether this is a reference to the "low-or-no-show" job, the $23,000 payment to Ms. Menendez 's mortgage company, the $10,000 checks to Strategic International Business Consultants, LLC, or some other "checks" not identified in the Indictment. Likewise, the "low-or-no-show" job is clearly alleged at different times and in connection with various

10

different scheme, *e.g.*, to influence Senator Menendez to assist Egypt and to ask Senator Menendez to use his influence to protect Mr. Hana's business. Ind. ¶¶ 19, 26, 27-31, 34. And the same is true with regard to the $23,000 payment to Ms. Menendez 's mortgage company, which was allegedly a bribe for both the alleged schemes to assist Egypt and to protect IS EG Halal; it simply fails to allege, as the Indictment must, that at the time this payment was accepted, Senator Menendez understood that its purpose was to influence either particular matter or question. *Id*. ¶ 32. Nor is either the $10,000 checks to Strategic International Business Consultants, LLC, which are not alleged to have been made in connection with any promise, *id*. ¶¶ 33-34, or the Mercedes-Benz automobile tied to a particular benefit (indeed, the purchase of the car is used in support of Counts 6, 7, and 9 as a purported bribe for *three* of the alleged schemes: to assist Egypt, to protect IS EG Halal, and to assist Mr. Uribe and his associates).[4] So, too, with regard to the obscure "personal property"—to the extent that refers to the two exercise machines and air purifier that Mr. Hana allegedly gave to the Senator, the factual allegations of the Indictment make literally no attempt to identify any particular matter or question that Senator Menendez supposedly agreed to influence as a result. *Id*. ¶ 37(c).

Other "things of value" that Mr. Hana purportedly provided to Senator Menendez appear to be completely superfluous, namely "cash," "gold," "transportation," or "promises of carpeting services." There is a single allegation that Mr. Hana purchased twenty-two one-ounce gold bars and that two of them were later found in the residence of Senator and Ms. Menendez , *id*. ¶ 37(e), but the Indictment alleges that Mr. Daibes—not Mr. Hana—gave these bars to Senator and Ms.

---

[4] Again, the factual allegations of the Indictment do not further elucidate such a claim. Other than a conclusory statement that Mr. Hana provided Ms. Menendez with a new automobile, Ind. ¶ 43, all of the factual allegations in the Indictment, including the allegations added following Mr. Uribe's plea proffer, relate to how Mr. Uribe supposedly provided Ms. Menendez the car, *id*. ¶¶ 43(a)-(f).

Menendez in connection with the purported scheme to disrupt a federal criminal prosecution in Mr. Daibes's favor, *id.* ¶¶ 46, 53(h).  As to the conclusory statement that Mr. Hana provided Senator Menendez with "cash," "transportation," and "promises of carpeting services," there are no factual allegations in the Indictment stating that Mr. Hana ever gave any of these things to Senator Menendez, corruptly or otherwise.

For these reasons, it is even clearer now that the Indictment simply alleges a hodgepodge of supposedly corrupt payments and purported actions that Senator Menendez took without further alleging that, or identifying how, there was an agreement that at the time those payments were made (or promised) they were intended to influence "official action" on a particular matter or question.  *See Silver II*, 948 F.3d at 556 ("[T]he relevant point in time in a *quid pro quo* bribery scheme is the *moment at which the public official accepts the payment*.")  (emphasis in original). Instead, the only thing that the Indictment makes clear is that the Government has alleged that Mr. Hana supposedly made payments and gave things of value to Ms. Menendez during a five-year period, and that during that same time period Senator Menendez allegedly undertook some actions to assist Egypt, Mr. Hana's business, an associate of Mr. Uribe, or perhaps for some other unidentified purpose.  As discussed above, this disconnected approach is, as a matter of law, insufficient to properly allege the *quid pro quo* that is an essential element of Counts 1, 2, 6, 7, and 9 after *McDonnell* and after the Second Circuit's application of *McDonnell* in *Silver II*.  Dismissal of these counts is therefore required, if only because, even after being re-drafted over and over, the Indictment still fails to allege the essential elements of the offenses charged.

## II.    COUNT 15 OF THE INDICTMENT MUST BE DISMISSED.

Count 15 of the Indictment, replacing what was previously Count 4, alleges that Senator Menendez, Ms. Menendez, and Mr. Hana, "and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to . . . have

a public official, to wit, ROBERT MENENDEZ, act as an agent of a foreign principal, to wit, the Government of Egypt and Egyptian officials, required to register under FARA, [22 U.S.C. § 611 *et seq.*],'' in violation of 18 U.S.C. § 219.  Ind. ¶ 109.  As Mr. Hana has set forth previously, *see* Hana Br. at 38-59; Hana Reply Br. at 20-27, what is now Count 15 fails for three independent reasons:  *first*, the text and structure of § 219 do not permit the Government to charge persons, such as Mr. Hana, who are not public officials with conspiracy to violate the statute, Hana Br. at 39-46; Hana Reply Br. at 28-32; *second*, the Indictment fails to properly charge a conspiracy to violate § 219 because it does not allege that Mr. Hana conspired to form an agency relationship between Senator Menendez and a foreign principal, as required by governing case law, Hana Br. at 47-54; Hana Reply Br. at 20-23 (explaining that the Indictment fails to provide Mr. Hana constitutionally adequate notice of the charges against him by failing to set out all the essential elements of the conspiracy charged—specifically who, if anyone, sought to control or direct Senator Menendez's actions, let alone that Mr. Hana willfully and knowingly conspired to facilitate an agency relationship between Senator Menendez and a "foreign principal"—and by the Indictment's confusing and gratuitous references to FARA, while no FARA violation is charged); and *third*, the statute is unconstitutionally vague as applied to the facts alleged in the Indictment, Hana Br. at 55-59; Hana Reply Br. at 23-27.  Each of these reasons, which are not re-stated here, warrants dismissal of the Indictment at this stage.

Among the fatal flaws of the Indictment, highlighted in its fourth and most recent iteration as well as in the Government's opposition to the previous motions to dismiss, is the fact that it continues to fail to identify which or who of several referenced Egyptian entities and persons is the "foreign principal" who purportedly sought to control or direct Senator Menendez's actions. Hana Br. at 51-54.  A definite, identifiable "foreign principal" is essential to the conspiracy's object

offense because § 219 prohibits a specific agency relationship between a "foreign principal" and a "public official." By failing to allege a fundamental component of the charged conspiracy's objective—*i.e.,* an identifiable "foreign principal"—the Indictment simply fails to plead that Mr. Hana willfully and knowingly entered into an agreement to achieve that objective. *See* Hana Br. at 51 ("[A] conspiracy pleading that omits allegations essential to the object offense is insufficient as a matter of law.") (citing *United States v. Martin*, 411 F. Supp. 2d 370, 372-75 (S.D.N.Y. 2006) and *United States v. Carrano*, 340 F. Supp. 3d 388, 395 (S.D.N.Y. 2018) (Stein, J.)). Instead, the Indictment implies that *any* of the several referenced "Egyptian officials" could be the "foreign principal" for the purposes of alleging the conspiracy's underlying purpose, *see* Ind. ¶ 109, completely undermining the Indictment's obligation to "fairly inform [Mr. Hana] of the charge against which he must defend," *United States v. Khalupsky*, 5 F.4th 279, 293 (2d Cir. 2021).

The Government, in apparent recognition of the this deficiency, has attempted to "redraft" the allegations of the Indictment to reference only benefits to "Egypt" and the "Government of Egypt" in its opposition brief, suggesting that none of the "Egyptian officials" referenced in the Indictment should be considered "foreign principals" in defining the alleged scheme's object. *See* Opp. at 2-4; Hana Reply Br. at 20-23. But, as noted above, the new Indictment is not so limited, instead alleging that Senator Menendez, Ms. Menendez , and Mr. Hana conspired "to have a public official, to wit, ROBERT MENENDEZ, act as an agent of a foreign principal, to wit, the Government of Egypt and Egyptian officials, required to register under FARA, [22 U.S.C. § 611 *et seq*.]," in violation of § 219. Ind. ¶ 109. Thus, while the Government's opposition attempted to sidestep the Second Superseding Indictment's muddled implication that any of the referenced "Egyptian officials" could be a "foreign principal" for the purposes of defining the conspiracy's objective, the new Indictment simply reaffirms the Government's failure to have set out an

14

essential element of the Count 15 charge.  For the reasons provided in Mr. Hana's previous briefing, *see* Hana Br. at 49-54; Hana Reply Br. at 20-23, the Government's persistent refusal to state who or which entity is the "foreign principal" allegedly seeking to direct the Senator's actions amounts to a failure to plead an essential element of the Count 15 charge, and warrants dismissal of that count.  If the Court disagrees and determines not to dismiss the Indictment despite this fundamental pleading failure, and the other pleading and constitutional defects previously discussed, the Government should at the very least be required to provide a bill of particulars setting forth the identity of the "foreign principal" at issue, so that Mr. Hana can prepare his defense and receive a fair trial and so that the Court may effectively and fairly preside over the complicated trial.  *See* Hana Br. at 61-65; Hana Reply Br. at 56-63.

## III. THE INDICTMENT IS DUPLICITOUS OR, IN THE ALTERNATIVE, MULTIPLICITOUS, REQUIRING AN ELECTION BETWEEN CONSPIRACY COUNTS.

### A. Counts 1, 2, And 15 (Formerly Count 4) Remain Impermissibly Duplicitous And Must Be Dismissed.

The conspiracy counts charged against Mr. Hana have been duplicitous since the start of this prosecution and remain so to this day.  While the Government's recently returned Indictment tries to address the duplicity defects raised in connection with the prior indictment by breaking down its substantive bribery and honest services fraud counts into three separate actions, the Government fails to make any effort to separate the conspiracy offenses charged in Counts 1, 2 and 15 (formerly Count 4) into separate counts.  As a result, Counts 1, 2 and 15 remain substantively identical to their corresponding counts in the former indictment, and continue to

suffer from the very same duplicity issues detailed in Mr. Hana's moving brief and reply.[5]  Hana Br. at 68-89; Hana Reply Br. at 37-48.

Specifically, Counts 1, 2, and 15, which all continue to incorporate the same factual allegations set forth in the introductory paragraphs of the Indictment, charge multiple different and completely unrelated conspiracies, with different goals and objectives, in each respective individual count.  These distinct schemes, which the Indictment itself neatly divides into five individually labeled sections, include:  (1) a scheme involving payments to Senator and Ms. Menendez to obtain assistance for Egypt and Egyptian officials; (2) a scheme regarding payments to protect IS EG Halal; (3) a scheme to disrupt New Jersey State criminal matters; (4) a scheme to disrupt Mr. Daibes's Federal prosecution; and (5) a scheme to take actions favorable to the Government of Qatar.  However, absent any unifying nexus, which the Government does not—because it cannot—allege, the Government's single conspiracy charges cannot stand.

But beyond the reasons that Mr. Hana has previously explained, the duplicitous nature of the conspiracy counts is perhaps most evidenced by the way in which the Government structures its new Indictment.  Adding a significant number of new substantive charges, the Government divides the substantive offenses into three different actions, identified as:  (1) "Actions to Benefit HANA and Egypt"; (2) "Actions to Benefit Uribe and Uribe's Associates"; and (3) "Actions to Benefit DAIBES and Qatar," and charges each of the three acts separately in each corresponding substantive count.  Thus, the Government charges the defendants with:  "Bribery – Actions to Benefit HANA and Egypt" (Counts 5-6), Ind. ¶¶ 88-91; "Honest Services Wire Fraud – Actions

---

[5] In Mr. Hana's moving brief and reply he thoroughly briefed the duplicity issues that plague the Government's conspiracy counts.  Because the conspiracy charges are fundamentally unchanged, Mr. Hana respectfully incorporates the arguments he made on pages 66-89 of his moving brief, and 35-48 of his reply, which will not be repeated here.

to Benefit HANA and Egypt" (Count 7), *id.* ¶¶ 92-93; and "Honest Services Wire Fraud – Actions to Benefit Uribe and Uribe's Associates" (Count 9), *id.* ¶¶ 96-97.  The Indictment further sets forth substantive bribery and honest services fraud charges against Mr. Daibes, Senator Menendez,  and Ms. Menendez based on "Actions to Benefit DAIBES and Qatar" (Counts 11-13), *id.* ¶¶ 100-105.

The duplicity problems persist, however.   For example, even assuming that the "Conspiracy to Commit Bribery" charge alleged in Count 1 no longer includes the "Actions to Benefit Uribe and Uribe's Associates," it nonetheless continues to include, at minimum, two completely unrelated schemes ("Actions to Benefit HANA and Egypt" and "Actions to Benefit DAIBES and Qatar"),[6] which the Government itself recognized are distinct acts by charging its substantive offenses related to the two schemes separately.  *See, e.g.*, *id.* ¶¶ 88-91 (Counts 5-6, "Bribery – Actions to Benefit HANA and Egypt"); *id.* ¶¶ 100-103 (Counts 11-12, "Bribery – Actions to Benefit DAIBES and Qatar").  Moreover, the risks of these duplicitous counts are clear: as Mr. Hana has explained, and as the Government appears to acknowledge by not charging him with a substantive bribery or honest services fraud count relating to "Actions to Benefit DAIBES and Qatar," *see id.* ¶¶ 100-101 (Count 11, "Bribery – Actions to Benefit DAIBES and Qatar As to ROBERT MENENDEZ and NADINE MENENDEZ"); *id.* ¶¶ 102-103 (Count 12, "Bribery – Actions to Benefit DAIBES and Qatar As to FRED DAIBES"), Mr. Hana had absolutely no involvement in the scheme to benefit Qatar or connection to the scheme to intervene in Mr. Daibes's Federal prosecution.  Hana Br. at 72; Hana Reply Br. at 39-41.  Nonetheless he faces the risk of being convicted of a conspiracy that includes evidence related to "Actions to Benefit

---

[6] Although the Government separates the conspiracies into three separate schemes, it is clear, based on the distinct conduct alleged, that the Indictment actually sets forth five individual conspiracies. Removing the Uribe related allegations, Count 1, therefore, continues to include four independent conspiracies, those being the schemes to (1) assist Egyptian officials, (2) protect IS EG Halal, (3) disrupt Mr. Daibes's Federal prosecution, and (4) benefit Qatar.

DAIBES and Qatar"—the very risk that the prohibition on duplicitous charges is intended to preclude. *See, e.g.*, *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006) (noting that one of the risks of a duplicitous indictment is that "jurors may not [be] unanimous as to any one of the crimes charged"); *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980) ("If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both."). For this reason, the conspiracy set forth in Counts 1 and 2 must be dismissed. *See United States v. Lech*, 161 F.R.D. 255, 257 (S.D.N.Y. 1995) (finding indictment to be duplicitous where defendant "had no involvement in the other schemes charged, and at most he had cursory knowledge of the other criminal activities . . . [e]ven if [defendant's alleged fraud] was a springboard for the other two schemes").

Moreover, even aside from those purported schemes in which Mr. Hana is not alleged to have participated, duplicity infects even those schemes in which he is expressly charged with having been involved (and again, assuming the truth of those disputed allegations, as he must for purposes of this motion). Thus, both Counts 1 and 2, and now Count 15, impermissibly sweep in, at a minimum, two separate schemes: (1) the scheme to assist Egyptian officials; and (2) the scheme to protect IS EG Halal. Hana Br. at 80-81. As thoroughly explained in Mr. Hana's prior briefing, these are two entirely distinct schemes with varying goals and objectives. Hana Br. at 69-81; Hana Reply Br. at 37-45. Any attempt by the Government to merge these two discrete conspiracies into a single, broad, overarching scheme concerning "Actions to Benefit HANA and Egypt" should, therefore, be rejected. *See United States v. Rigas*, 281 F. Supp. 2d 660, 664 (S.D.N.Y. 2003) ("[A]n indictment may not charge multiple conspiracies in a single count.").[7]

---

[7] Mr. Hana incorporates by reference and does not, as the Court requested, here reiterate the arguments made in his moving brief and reply concerning the duplicitous nature of the conspiracy charges against him. *See* Hana Br. at 66-89; Hana Reply Br. at 35-48. Specifically, Mr. Hana

Finally, lest there be any question about it, the Court's own description of the factual allegations in the Indictment further illustrates the individual nature of the different schemes. In the Court's March 14, 2024 Opinion & Order, addressing Senator Menendez's motion to dismiss the former Second Superseding Indictment pursuant to the Speech or Debate Clause of the United States Constitution, the Court clearly divided the two applicable conspiracies into two separate schemes, each with its own individually labeled subheading.[8]  *See* ECF No. 252 at 1 ("The allegations that Menendez contends must be dismissed because they violate the Speech or Debate Clause concerns (1) Menendez's process for recommending to the President a candidate for U.S. Attorney for the District of New Jersey, up to and including the recommendation itself (the 'U.S. Attorney Scheme'), and (2) Menendez's meetings and actions concerning foreign aid to Egypt, including his alleged disclosure of sensitive non-public information to Egyptian officials (the 'Egyptian Aid Scheme')."); *id.* at 3 (Section II.A, "U.S. Attorney Scheme"); *id.* at 6 (Section II.B, "Egyptian Aid Scheme").  Accordingly, based on the structure of the Indictment, leading not only the Government but also the Court to separate the schemes, there is no question but that multiple, distinct conspiracies are alleged.  *See United States v. Marlinga*, No. 04-cr-80372, 2005 WL

---

respectfully refers the Court to his previous arguments regarding the disparate nature of the payments to secure funding and financing for Egypt and bribes to protect the business "monopoly" granted to IS EG Halal, Hana Br. at 69-81; Hana Reply Br. at 37-45, the irreparable harm and prejudice that he will suffer if the Government is allowed to proceed on the duplicitous indictment, Hana Br. at 81-85; Hana Reply Br. at 47-48, and the reasons why dismissal is the appropriate remedy here, Hana Br. at 86-89; Hana Reply Br. at 45-47.

[8] Although the Court's March 14, 2024 Opinion & Order addressed Senator Menendez's motion to dismiss the former Second Superseding Indictment, the Court's analysis applies with equal force to the fourth iteration of the Indictment currently before the Court.  In the Government's own words:  "The Superseding Indictment includes the same offenses as the S2 indictment as to Robert Menendez, Nadine Menendez, Wael Hana, and Fred Daibes, but also charges corresponding substantive offenses."  Gov't March 5, 2024 Letter, ECF No. 239 at 1.  For purposes of this discussion, the facts alleged in the Third Superseding Indictment remain virtually the same, and the three conspiracy charges are identical to those set forth in the Second Superseding Indictment.

513494, at *4 n.2 (E.D. Mich. Feb. 28, 2005) (finding two separate conspiracies where separate headings were given to each scheme in the indictment); *United States v. Munoz-Franco*, 986 F. Supp. 70, 71-72 (D.P.R. 1997) (conspiracy charge was duplicitous where the overt acts were neatly divided between two different sets of co-conspirators in separate sub-titles in the indictment).

### B.    In The Alternative, Counts 1, 2, And 15 Are Multiplicitous.

Finally, if the Indictment is deemed not to be duplicitous, then it follows, as previously argued, that its conspiracy charges, at least, suffer from the flip side of this analysis:  they are multiplicitous.  That is, as Mr. Hana has previously demonstrated, the conspiracies charged in Counts 1, 2, and 15 (previously charged as Count 4) are not separate schemes, but instead the same conspiracy charged three times. *See* Hana Br. at 90-102.  The Government's opposition brief essentially confirmed as much, and conceded that multiplicity challenges are, under certain circumstances, cognizable before trial in this Circuit.  *See* Hana Reply Br. at 48-51 (noting the Government's repeated contentions that the Indictment alleges a "single scheme," and explaining that pretrial multiplicity challenges are permissible).  Nothing in the Indictment changes this conclusion:  each of the preexisting conspiracy counts survives and each continues to incorporate the entirety of the Indictment by reference, leaving the same multi-pronged conspiracy to be repeated over and over and over, in separate counts, rendering the Counts 1, 2, and 15 identical and, therefore, classically multiplicitous.  Therefore, the Court should, in its discretion and in order to make the forthcoming trial of this matter more efficient, much more comprehensible to the jury, and far less subject, in the event of conviction, to the kind of post-trial attack to which the Government points the Court as the usual remedy for multiplicity, Opp. at 104-06, order the Government to elect between these multiplicitous counts.  Hana Reply Br. at 50-51.

### C.    Counts 6 And 7 Are Impermissibly Duplicitous And Must Be Dismissed.

Newly added Counts 6 and 7, alleging substantive offenses, suffer from many, if not all, of the same duplicity problems associated with the conspiracy counts above.  In the most recent Indictment, the Government brings two additional counts against Mr. Hana for substantive bribery and honest services fraud violations based on actions purportedly made to benefit Mr. Hana and the Arab Republic of Egypt.  *See* Ind. ¶¶ 90-91(Count 6, "Bribery – Actions to Benefit Hana and Egypt"); *id*. ¶¶ 92-93 (Count 7, "Honest Services Wire Fraud – Actions to Benefit Hana and Egypt").  But like the duplicitous conspiracy charges above, Counts 6 and 7 impermissibly combine two distinct offenses in each respective singular count, resulting in a duplicitous indictment that, under the law, must be dismissed.  *See United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992) ("An indictment is duplicitous if it joins two or more distinct crimes in a single count."); *United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) ("An impermissibly duplicitous indictment is subject to dismissal.").

The rule against duplicity is clear, particularly in the substantive bribery context:  "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby."  *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).  And with respect to bribery, courts have rejected the practice of charging several acts of bribery in a single count.  For example, in *United States v. Tutein*, the court held, in the context of bribery under 18 U.S.C. § 666, that "every corrupt offer warrants a separate charge under section 666."  122 F. Supp. 2d 575, 577 (D.V.I. 2000).  Likewise, in *United States v. Anderson*, the defendant, who was convicted of three counts of bribing a United States Senator under 18 U.S.C. § 201(b)(1), challenged the trial court's imposition of separate sentences on each of the three bribery counts.

509 F.2d 312, 315, 331 (D.C. Cir. 1974). Specifically, the defendant argued that his payments to the Senator were "all part and parcel of a single design—in his words, 'three installments of the same transaction'—with the result that consecutive sentences were improper." *Id.* The court rejected his argument, "discard[ing] the 'installment' theory of bribery in favor of the view that each bribe warrants a separate penalty." *Id.* at 333.

Here, Counts 6 and 7 each seek to charge distinct bribes, with different supporting allegations: the first relating to payments to obtain certain benefits for Egypt, including foreign military sales/financing, and the second to protect a business "monopoly" granted to IS EG Halal. As Mr. Hana has explained, on its face, the Indictment substantively attempts to allege two separate bribes, as parts of two different bribery schemes, involving entirely different promises, goals, and objectives. *See* Hana Br. at 69-80; Hana Reply Br. at 37-45. In fact, the Government itself acknowledges the distinct nature of these two acts by separating them within each duplicitous count, claiming that Mr. Hana and Mr. Daibes provided or promised "cash, gold, checks, personal property, meals, transportation, promises of carpeting services, and promises of the purchase of an automobile" in exchange for the Senator's "agreement and promise to use, and/or the actual use of, his official authority and influence to attempt to cause, through advice and pressure, the USDA to act favorably toward a business monopoly granted by the Government of Egypt to HANA, *and* to take other actions that benefitted the Government of Egypt, including with respect to U.S. military aid." Ind. ¶¶ 91, 93 (emphasis added). This flagrant attempt to lump together, in one single charge, two distinct sets of facts involving two different bribes, must fail—both for failure to satisfy the *quid pro quo* requirement, as set forth above, *see supra* at Section I.B., and on grounds of duplicity.

Indeed, as currently written, Counts 6 and 7 create a serious risk that the jury will convict Mr. Hana for one or both offenses without unanimously agreeing on either course of conduct.  *See United States v. Margiotta*, 646 F.2d 729, 732-33 (2d Cir. 1981) ("[A]voiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another" is a core "policy consideration" underlying the duplicity doctrine.); *Munoz-Franco*, 986 F. Supp. at 71 (allowing a duplicitous indictment to proceed to trial risks that "a jury [will] find a defendant guilty on the count without having reached a unanimous verdict on the commission of any particular offense").  For example, if the jury were to return a guilty verdict on Counts 6 or 7, neither Mr. Hana, the Government, nor the Court would be able to determine whether the jury was unanimous as to which bribe, if any, it found of the two described in the Indictment.  *See Murray*, 618 F.2d at 896 ("If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both.").  In short, were these duplicitous charges allowed to proceed to trial, Mr. Hana would be at risk of the deprivation of his right to a unanimous jury verdict, with all of the consequences thereof, including his right to an appropriate sentencing and ability to challenge any conviction in post-trial motions or on appeal.  *See* Hana Brief at 81-83; Hana Reply Br. at 46-48. When such fundamental issues are implicated, a duplicitous indictment simply cannot stand.  *See United States v. Pleasant*, 125 F. Supp. 2d 173, 175-83 (E.D. Va. 2000) (dismissing duplicitous counts pretrial because of potential harm that could result by allowing the government to proceed on the indictment as charged); *United States v. Conley*, 826 F. Supp. 1536, 1544-48 (W.D. Pa. 1993) (dismissing duplicitous count pretrial where "potential prejudice abounds").  Accordingly, Counts 6 and 7 should be dismissed on duplicity grounds as well.

## IV.    THE FOURTH VERSION OF THE INDICTMENT STILL DOES NOT ADEQUATELY ALLEGE VENUE.

Mr. Hana has already shown that venue is lacking with respect to the conspiracy charges against him, and will not repeat those argument here.  *See* Hana Br. at 102-111; Hana Reply Br. at 51-56.  In the current version of the indictment, those charges are now Count 1 ("Conspiracy to Commit Bribery"), Count 2 ("Conspiracy to Commit Honest Services Wire Fraud"), and Count 15 ("Conspiracy For a Public Official to Act as a Foreign Agent").[9]  In particular, the Government has added no new allegations addressed to venue with respect to Count 15, as to which Mr. Hana has demonstrated that venue is not adequately alleged by his attendance at two dinners, neither of which is alleged to include an overt act that was in furtherance of the conspiracy.  *Compare* S2 Ind. ¶ 83, *with* Ind. ¶ 110; *see also* Hana Br. at 109-111.  Thus, the Court can address that count without reference to this submission.

Moreover, the latest iteration of the Indictment contains limited additional allegations as to Counts 1 and 2:

- At the time Mr. Uribe requested that his associate make a financing payment for a vehicle for Nadine Menendez, that associate was located in the Bronx. Ind. ¶ 78(b).

- When Mr. Uribe's associate made that payment, he was also located in the Bronx.  *Id.* ¶ 78(c).

- The text message that Ms. Menendez sent to Mr. Uribe on September 5, 2019, which was transmitted through a cell tower in Manhattan, was "regarding scheduling a meeting between Uribe, MENENDEZ, and NADINE MENENDEZ."  *Id.* ¶ 78(d).

- "On or about October 17, 2021, DAIBES arranged for MENENDEZ and NADINE MENENDEZ to be picked up at the John F. Kennedy airport and driven through the Southern District of New York to their home in New Jersey.  *Id.* ¶ 78(f).

---

[9] Count 15 was Count 4 in prior iterations of the indictment, for purposes of referencing previously filed briefs.

Plainly, none of these new allegations pertain to Mr. Hana, and while that would otherwise be immaterial for a conspiracy charge, it is problematic here where the Government has duplicitously charged multiple separate conspiracies in each of Counts 1 and 2.  *See* Hana Br. at 66-89; Hana Reply Br. at 35-48.  In doing so, the Government improperly seeks to attain venue as to Mr. Hana for two conspiracy charges that ought not be, but are, contained in those two counts.  Indeed, one of the problems with duplicitous counts encompasses what occurred here:  they do not allow the Court to make the kind of careful, fact-based analysis of a given count for purposes of determining whether venue lies as a matter of either the venue statute, 18 U.S.C. § 3232;*see also* Fed. R. Crim. P. 18, or the Constitution, U.S. Const. art. III, § 2, cl. 3.  *See United States v. Tingle*, 183 F.3d 719, 727 (7th Cir. 1999) (reversing conviction for improper venue and noting that "any attempt to [cure venue issues and] allege these two offenses in one count of the indictment would have resulted in a duplicity problem").

Nevertheless, these new allegations are still insufficient to establish venue under the law, as Mr. Hana explained in his prior submissions.  *See* Hana Br. at 102-111; Hana Reply Br. at 51-56.  As applied to the Government's new allegations, though they seem to have been added solely in order to establish venue over a case where there otherwise is none, the actions of some third-party associate of Mr. Uribe in the Bronx, completely unconnected to Mr. Hana, cannot establish venue over Mr. Hana.  That is because, while Mr. Uribe is an alleged co-conspirator, whose acts can establish venue, his associate located in the Bronx is not.  *See United States v. Tzolov*, 642 F.3d 314, 320 (2d Cir. 2011) ("An overt act is any act performed *by any conspirator* for the purpose of accomplishing the objectives of the conspiracy.") (emphasis added); Ind. ¶¶ 78(b)-(c).

Likewise, with respect to the text message that was transmitted through a Manhattan cell tower, the Indictment now describes it as being "regarding scheduling a meeting."  Ind. ¶ 78(d).

But this addition does nothing to repair the flaws identified in Mr. Hana's moving brief—specifically, the Government has failed to allege that the message was in furtherance of the conspiracy.  Not only is there no allegation that this text included discussions about an agreement that is the essence of a conspiracy, let alone about promises to pay or receive bribes or to provide or obtain benefits in exchange therefor, or any other conduct that would be considered an essential conduct element or was in furtherance of the conspiracy allegations, but there are no allegations that anything material to the charged offenses occurred at the scheduled meeting referenced, as would be required to sustain venue in this case.[10]  *See* Hana Br. at 108-109 (citing *Tzolov*, 642 F.3d at 320 ("[V]enue is proper in any district in which an overt act in furtherance of the conspiracy was committed. . . .  An overt act is any act performed by any conspirator *for the purpose of accomplishing the objectives of the conspiracy*.") (emphasis added)); *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) (same).

Finally, the added allegation in the conspiracy counts, that Mr. Daibes gave Senator and Ms. Menendez  a ride home from JFK airport, though not new to the Indictment, has now attained prominence as the basis of venue for Count 1 of the Indictment.  That is, although this allegation was contained in all three previous versions of the Indictment, *see* S2 Ind. ¶ 51; S1 Ind. ¶ 50; Orig. Ind. ¶ 42, it has now denominated an overt act in furtherance of the Count 1 conspiracy in order to make it a potential basis for venue, *see Yuk*, 885 F.3d at 69 (venue for conspiracy charge only proper where overt act in the district was performed by a co-conspirator and in furtherance of the

---

[10] There are two text messages on this date that could possibly be viewed as "regarding a scheduling meeting," neither of which suggest that the text, the act of scheduling, or the "meeting" (which appears to have been merely a social gathering) had anything to do with any bribery conspiracy:  7:50 PM text: "He says at my house"; 8:38 PM text:  "No we will have cigars and I have grand mariner but no beer.  [Ms. Menendez's New Jersey home address].  I will text you when we are on our way.  Should be by 930 pm.  Thank you for making it."

conspiracy); *Tzolov*, 642 F.3d at 320 (same).  Ind. ¶ 78(f).  But the Indictment contains no allegations connecting this airport ride to a purported conspiracy scheme involving Mr. Hana[11] and it is not alleged to have been "for the purpose of accomplishing the objectives of the conspiracy." *Tzolov*, 642 F.3d at 320.

Nor, with respect to the conspiracy counts in which Mr. Hana is charged is it alleged that it was "reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district where the prosecution is brought." *Yuk*, 885 F.3d at 69 (quoting *United States v. Rommy*, 506 F.3d 108, 123 (2d Cir. 2007)).  Certainly, given Mr. Hana's lack of involvement in these distinct alleged schemes, it is not alleged that it was even remotely "foreseeable" to Mr. Hana that Mr. Uribe would have an associate in the Bronx and that this person would arrange for a payment to Ms. Menendez .  *Id.* ("[V]enue requirement . . . demand[s] some sense of venue having been freely chosen by the defendant.").  Nor—having nothing to do with either of these events according to the Indictment—could Mr. Hana have any reason to foresee that (1) Mr. Daibes would provide a car ride home from a New York airport to Senator and Ms. Menendez , or (2) that one of Ms. Menendez 's text messages to Mr. Uribe inviting him to a social event on September 5, 2019, which Mr. Hana neither attended nor was invited to, would be transmitted through a cell tower in New York.  Accordingly, notwithstanding the Government's additions to the Indictment for purposes of establishing venue, Counts 1, 2, and (now) 15 should still be dismissed for lack of venue.

---

[11] The Indictment also alleges that this car ride was an overt act in furtherance of the new conspiracy charged in Count 4 against Mr. Daibes and Senator and Ms. Menendez  (conspiracy to commit obstruction of justice).  Ind. ¶ 87(a).  But Mr. Hana is not alleged to have been involved in that conspiracy—just as he is not alleged to have been involved in, or even to have had any knowledge of, the provision or organization of this car journey from JFK airport.

With respect to the new substantive charges against Mr. Hana—"Bribery – Actions to Benefit HANA and Egypt (Count 6), Ind. ¶¶ 90-91; "Honest Services Wire Fraud – Actions to Benefit HANA and Egypt" (Count 7), *id*. ¶¶ 92-93; and "Honest Services Wire Fraud – Actions to Benefit Uribe and Uribe's Associates" (Count 9), *id*. ¶¶ 96-97—because these are not conspiracy charges, it is not sufficient that the Indictment allege merely an overt act. Instead, for venue to lie for such charges, "the crime's 'essential conduct elements,'" *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020), must have occurred in the Southern District of New York, such that it can fairly be said that prosecution is "in a district in which the offense was committed," *United States v. Rodriguez-Moreno*, 526 U.S. 275, 278 (1999). This means, for example, that, for wire fraud charges like those at issue here in Counts 7 and 9, the use of wires must be "part of the charged offense[s]" and not tangential to it. *United States v. Ramirez*, 420 F.3d 134, 143-45, *addt'l op.*, 146 F. Appx. 518 (2d Cir. 2005). Nor are acts occurring in the district that are merely a "circumstance element of . . . proscribed conduct [that] occurred 'after the fact' of an offense begun and completed by others" sufficient to establish venue. *Rodriguez-Moreno*, 526 U.S. at 280 & n.4; *see also United States v. Cabrales*, 524 U.S. 1, 7-8 (1998) (money laundering prosecution was improperly venued in Missouri because the defendant was charged in the indictment only with money laundering activity that occurred in Florida, but was not alleged to have participated in the unlawful conduct in Missouri which generated the laundered funds in question); *Tzolov*, 642 F.3d at 319 ("[G]oing to Kennedy airport and boarding flights to meetings with investors were not a constitutive part of the substantive securities fraud offense with which [defendant] was charged."); *Ramirez*, 420 F.3d at 141-42, 144 (venue did not lie in the Southern District for mail fraud when the scheme to defraud originated in the Southern District but the mailing occurred in another district); *United States v. Geibel*, 369 F.3d 682, 697 (2d Cir. 2004) (finding venue improper where

actions in the Southern District of New York were "anterior and remote" to the criminal conduct); *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1189-90 (2d Cir. 1989) (holding, in prosecution for introducing adulterated and misbranded apple juice into interstate commerce, that venue was not proper in the Eastern District of New York because the conduct that occurred in that district was "not part of the offense of introducing the offending juice into commerce but . . . merely prior and preparatory to that offense"); *United States v. Bezmalinovic*, 962 F. Supp. 435, 437 (S.D.N.Y. 1997) (acts alleged in the Southern District did not support venue because they were too "ministerial" and were not "intended or foreseen by defendant").

Counts 6 and 7 allege that Mr. Hana gave something of value with the intent to influence Senator Menendez to promise to and actually use his official authority to (1) pressure the USDA to "act favorably" with regard to a private contract between Mr. Hana's company and an entity in Egypt owned by certain branches of the Egyptian government, and (2) "take other actions that benefited the Government of Egypt." Ind. ¶¶ 91, 93. But there are absolutely no allegations that the Senator took any action to pressure the USDA or to otherwise benefit Egypt within this District. *See, e.g.*, *id.* ¶ 30 (alleging no location for Senator Menendez's call to a USDA official, purportedly to seek cessation of USDA opposition to Mr. Hana's private contract). Nor is there any allegation that the Senator promised to pressure the USDA or take actions to benefit Egypt while in, or by any communication that was transmitted to or from, the Southern District of New York. *See, e.g.*, *id.* ¶ 16 (alleging no location for paragraph addressing "MENENDEZ Agrees to Take Actions that Benefit Egypt and HANA in Exchange for Promises of Things of Value"); *id.* ¶ 22 (alleging no location with respect to Mr. Hana purportedly promising Ms. Menendez "payments, including through a low-or-no show job"); *id.* ¶ 37(g) (no location alleged for communication from Ms. Menendez to Mr. Hana stating that Senator Menendez had to sign off on two pending military

sales to Egypt). Finally, the things of value that Mr. Hana is alleged to have given to Senator Menendez in exchange for these alleged official actions are neither located in nor are alleged to have been transmitted into or from the Southern District of New York. *See, e.g.*, *id*. ¶ 32 (no location alleged for Mr. Hana's payment towards Ms. Menendez 's overdue mortgage); *id*. ¶ 34 (no location alleged for IS EG Halal checks issued pursuant to consulting agreement with Ms. Menendez 's company, Strategic International Business Consultants); *id*. ¶ 37(c) (referencing either a New Jersey or D.C. location for the allegation that Mr. Hana sent Ms. Menendez an exercise machine and an air purifier); *id*. ¶ 37(e) (alleging two one-ounce gold bars previously purchased by Mr. Hana to be located at the Menendez residence). Indeed, with respect to the new substantive counts, as to each of which venue must be assessed separately, *see* Hana Br. at 104, even if the Court somehow finds venue as against Mr. Hana for purposes of the conspiracy, there is no allegation of facts connected to an essential conduct element of either bribery or honest services wire fraud that support venue for these charges in this district, which must be dismissed.

Count 9 alleges that Mr. Hana transmitted something by means of wire in interstate commerce in order for Senator Menendez to use his position to obtain things of value from Mr. Hana in exchange for Senator and Ms. Menendez 's promise, and actual efforts, to influence a criminal prosecution. Ind. ¶ 97. These wires to and from the Southern District of New York are generally alleged in the charging paragraph to be "cash, payments toward the Mercedes-Benz Convertible, and meals from HANA and Jose Uribe." *Id*. But even a cursory review of the substantive allegations of the Indictment reveals that Mr. Uribe is the only participant—albeit in an extremely limited way—with any connection whatsoever to the Southern District of New York. *See, e.g.*, *id*. ¶ 39 (alleging no location); *id*. ¶ 42(a) (alleging no location for a dinner attended by Mr. Hana and the Menendezes or subsequent text messages); *id*. ¶ 42(b) (alleging no location for

call by Senator Menendez to New Jersey official).  Indeed, the only conduct in which Mr. Hana is alleged to have engaged with respect to this apparent scheme is the receipt of (1) a communication from Mr. Uribe expressing concern about a criminal prosecution, *id*. ¶ 40, and (2) forwarding information about the case to Ms. Menendez .  But neither of those communications are alleged to have been transmitted to or from this district.  Instead, and again, the only allegations that relate to this district are payments made from the bank account of a business belonging to an associate of Mr. Uribe, which bank account had previously been opened at a bank branch in the Bronx.  But as noted above, these allegations are not in any way tied to Mr. Hana, who is not charged with involvement with any wire into or from this district, but has the right to an individual assessment of venue.  *Khalupsky*, 5 F.4th at 291 (Government must allege "appropriate venue on each count, as to each defendant.").  Moreover, and in any event, the law is clear that the kind of act engendered by previously opening an account in the Bronx is not sufficient to establish venue.  *See Beech-Nut Nutrition Corp.*, 871 F.2d at 1189-90 (no venue in district where defendant's conduct in the district was "merely prior and preparatory to that offense").  For all of these reasons, and those set forth in his prior submissions, venue is improper in the Southern District of New York, and the Indictment must be dismissed against Mr. Hana.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Hana's moving brief and reply brief (ECF Nos. 143 & 186), the Court should enter an Order dismissing Counts 1, 2, 6, 7, 9, and 15 of the Indictment. Alternatively, the Court should enter an order (1) striking Paragraph 15 from the Indictment and (2) granting a bill of particulars. Mr. Hana also joins in all applicable motions filed by his co-defendants.

Dated:  March 25, 2024                          Respectfully submitted,

                                                *s/ Lawrence S. Lustberg*
                                                Lawrence S. Lustberg
                                                Ricardo Solano, Jr.
                                                Anne M. Collart
                                                Andrew J. Marino
                                                Christina M. LaBruno
                                                Jessica L. Guarracino
                                                Elena M. Cicognani
                                                **GIBBONS P.C.**
                                                One Gateway Center
                                                Newark, New Jersey 07102
                                                (973) 596-4500
                                                llustberg@gibbonslaw.com