O4N3MENC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   UNITED STATES OF AMERICA,
3
                v.                        23 CR 490 (SHS)
4
   ROBERT MENENDEZ, WAEL HANA,
5  and FRED DAIBES,

6                    Defendants.

7  ------------------------------x

8                                    New York, N.Y.
                                     April 23, 2024
9                                    2:30 p.m.

10 Before:

11                    HON. SIDNEY H. STEIN,

12                                    District Judge

13                         APPEARANCES

14 DAMIAN WILLIAMS
15      United States Attorney for the
        Southern District of New York
16 ELI J. MARK
   DANIEL C. RICHENTHAL
17      Assistant United States Attorneys
                -and-
18 CHRISTINA A. CLARK, National Security Division

19
   PAUL HASTINGS, LLP
20      Attorneys for Defendant Menendez
   ADAM FEE
21
   GIBBONS, PC
22      Attorneys for Defendant Hana
   LAWRENCE S. LUSTBERG
23 ANNE M. COLLART
   CHRISTINA LaBRUNO
24
   CESAR de CASTRO
25      Attorney for Defendant Daibes

O4N3MENC

1      THE COURT:  Counsel, why don't you make your
2  appearances, please.
3      MR. MARK:  Good afternoon, your Honor.  Eli Mark on
4  behalf of the government.  With me at counsel table is
5  Christina Clark of the National Security Division, and Daniel
6  Richenthal of my office.
7      MR. FEE:  For Senator Menendez, Adam Fee.
8      MR. LUSTBERG:  Larry Lustberg with Anne Collart and
9  Christina LaBruno on behalf of Mr. Hana.
10      MR. DE CASTRO:  Cesar de Castro for Mr. Daibes.
11      THE COURT:  This was to be our Section 6 conference,
12  and I understand the parties are talking to each other and they
13  want a brief adjournment of this conference, which is fine with
14  me.
15      Have you talked amongst yourselves?  What is the
16  proposal for the adjourned date and time?
17      MR. MARK:  Yes, your Honor.  We've been conferring and
18  have conferred a number of times.  We anticipate that we might
19  be able to moot some of the issues on the classified
20  information that was noticed.  There are five items.  I think
21  we might be able to moot some, but not necessarily all.  I
22  understand the defense would like an opportunity to put in a
23  submission by Thursday, so two days from today.
24      THE COURT:  What type of submission?
25      MR. LUSTBERG:  Sure.

3

O4N3MENC

1          THE COURT:  This is a supplemental Section 5?

2          MR. LUSTBERG:  Yes, your Honor.  So, we got the

3     government's 48-page submission in the SCIF earlier today.  It

4     was just filed, as I think you know, late Friday, which was the

5     same day as we got all of our 3500 material.

6          We would like to file a short letter responding with

7     respect to some of the evidence issues that are raised, and

8     particularly the hearsay issues that are raised there.  And

9     again, it would be a joint submission on behalf of all the

10    defendants, so it wouldn't tax the Court more than it needs to

11    be.  I do anticipate it will be short, a few pages.

12         And we've talked to the government about timing, and

13    the idea is we would get it -- I think we discussed getting it

14    to the government on Thursday.  So we are just looking for two

15    days to do that.

16         MR. MARK:  And over that period of time, your Honor,

17    as in our submission, there is one item of information that we

18    proposed we might be able to work around with a stipulation.

19    The parties have already talked about what the form of that

20    stipulation might do, which could potentially moot the notice

21    that's to summary substitution no. 2.  And we understand that

22    defense is going to -- we're going to work on that stipulation

23    and see if that's something we will be able to present to your

24    Honor and that can moot that one item of information that's

25    noticed.

O4N3MENC

1        We also said that the government is open to

2    considering stipulations as towards -- that could moot issues

3    as to the other information, where there might be other

4    unclassified information that normally we would be able to

5    raise certain hearsay objections to, whether we might be able

6    to work around that as to other issues.

7        So I think parties will take that time, not just for

8    the defense to put in a submission, but also see whether we can

9    work around the issues as to other classified information.

10        The government would then anticipate we would probably

11    come before your Honor for a hearing.  We talked about whether

12    the Court would be willing for Friday to have a hearing on

13    whatever remaining issues that might exist, for the Court to

14    determine whether the remaining noticed information is actually

15    admissible.

16        If the Court were to make such a determination at that

17    point in time, then the government would needed to go back to

18    the stakeholders, because we would be dealing with classified

19    information, we would need time to confer with the stakeholders

20    and determine what sort of proposal we would make in a Section

21    6(c).

22        THE COURT:  I'm not here Thursday afternoon or Friday,

23    so that's not a possibility.

24        I want any evidentiary submission, that is a

25    submission arguing the evidentiary points, to me by -- let's

O4N3MENC

1    make it 4 p.m. tomorrow, Tuesday.   5 p.m.   Tuesday.

2              MR. FEE:  Wednesday, your Honor.

3              THE COURT:  Wednesday, thank you.  Have that to me by

4    5 p.m. on Wednesday.

5              Mr. Rucker, that's going to be sealed so you'll get

6    that to me?

7              MR. RUCKER:  Yes, your Honor, I will.

8              THE COURT:  I want to give the parties the time they

9    need to talk this through.  By the same token, I'd rather have

10   the conference on Thursday.  Can we do it Thursday morning?

11   Something like 11 a.m.?  Will that, again, I want the parties

12   to have time to try to reduce the core issues before me.   If

13   not, we'll do it Monday morning.

14             MR. LUSTBERG:  I'm concerned, I actually think that --

15   well, that will be enough time for us to get you our objections

16   and to talk about those.  I'm a little more concerned about

17   getting to a stipulation that quickly.

18             THE COURT:  Monday early afternoon.

19             MR. MARK:  I think that's right.  And right now we've

20   proposed a stipulation that might moot concerns as to one item

21   of noticed information.  We're open to the defense if there are

22   other ways to moot certain information, we'll also consider

23   that as well.

24             So I think Monday, we understand -- the one thing we

25   want to flag for your Honor is that it obviously, to the extent

O4N3MENC

1  we do go to 6(c), that obviously will take time with the

2  relevant stakeholders.

3        THE COURT:  I understand.

4        MR. MARK:  I think Monday will give us enough time for

5  the trial date of May 13.

6        THE COURT:  Defense will get me the evidentiary

7  submission by tomorrow at 5.  We will have Section 6, not ex

8  parte but sealed conference at 3 p.m. Monday, April 29.  I have

9  some other matters on just before that, but I should be clear

10  at or around 3 p.m.

11        Let's move the final pretrial conference to Thursday

12  morning, 11 a.m.  Can the parties does that.

13        MR. LUSTBERG:  So, your Honor, one of the great things

14  about the extension of the trial date that you granted was that

15  I have a daughter who is getting married the next day in

16  California.  So I'm out Wednesday, Thursday and Friday of next

17  week.  If it was done in some remote fashion, I could make that

18  happen.  But, I was actually going to ask if the Court would

19  just push the pretrial conference a few -- or an hour later for

20  other reasons, but that's going to be difficult for me.  There

21  are other people on my team that could handle it I suppose.

22        THE COURT:  Well, first things first.  I want you to

23  handle your daughter's marriage, obviously.

24        MR. LUSTBERG:  I'm having a hard time with that too.

25        THE COURT:  You do have a solid trial team behind you.

O4N3MENC

1   And if we do it Wednesday, what does the wedding schedule look

2   like on Wednesday?

3           MR. LUSTBERG:  I'm flying out there, it's in

4   California, on Wednesday.  So really the rest, from then on.

5           THE COURT:  When do you fly out?

6           MR. LUSTBERG:  9 a.m. flight on Wednesday.  But again,

7   I'm happy to -- for the pretrial to have someone else cover it.

8   I mean, I wonder, since the trial date has been put off, can we

9   potentially could do it, consistent with what we were going to

10  do before, even Monday?

11          THE COURT:  We could do it May 6.  I don't see that as

12  a major event, the final pretrial conference.  I do want to fit

13  in -- I do want to fit in time for discussion with the parties

14  of the in limines.  I've gone through them, I feel I have a

15  good grasp of them, but I would like to be able to talk with

16  the parties about it.  I'm a little reluctant to do it.  But

17  Monday, May 6.

18          MR. MARK:  That works for the government.

19          MR. LUSTBERG:  Thank you.

20          MR. FEE:  Makes sense, your Honor.

21          THE COURT:  Monday, May 6, 11 a.m. final pretrial

22  conference.

23          Government, you were going to get me that stip that

24  the parties agreed to.  I wanted to have it to take a look at

25  it.

O4N3MENC

1          MR. MARK:  Your Honor, we submitted a copy by e-mail

2     to the Court's deputy.  We submitted in that fashion because it

3     references a number of third parties.

4          THE COURT:  I didn't realize that had happened.

5          MR. MARK:  We can resend that.

6          THE COURT:  Just a moment.  It's already been filed.

7          MR. MARK:  Excellent.

8          THE COURT:  I have a very efficient deputy.

9          Final pretrial conference Monday, May 6, 11 a.m.

10    Section 6 conference 3 p.m. Monday, April 29.

11          Mr. Lustberg, I want to retain the ability to talk

12    about those in limines on Wednesday, Thursday, or Friday.  I'll

13    try to avoid that, but if need be, you have a team and I'm sure

14    you've gone over those issues.

15          MR. LUSTBERG:  Sure, Judge.  I would love to be

16    present, but if you need to do it those days, I understand.

17          THE COURT:  Okay.  I think that's it.

18          MR. MARK:  And the government will be available then

19    if that's the Court's preference.  We just wanted to make the

20    Court aware that in addition to the motions in limine that were

21    filed, we received notice for certain defense experts.  At

22    present, the government's intending to file some sort of

23    response with the Court.

24          THE COURT:  I want the notice and I want the response.

25          MR. MARK:  And we would intend do that next week, your

O4N3MENC

1    Honor.

2              THE COURT:  Do it as soon as you can.

3              MR. MARK:  We will, your Honor.

4              THE COURT:  Who are the experts who have been noticed?

5    What experts?

6              MR. FEE:  Your Honor, we've noticed a financial

7    analyst who assesses the senator's spending habits, given that

8    they've been made an issue here.  That's one.  And the second

9    is a psychiatrist, your Honor, who has examined Senator

10   Menendez.

11             THE COURT:  What's the theory of the mental state?

12             MR. FEE:  Your Honor, it goes to the habit of storing

13   cash in his home.

14             THE COURT:  He can testify to that, right?

15             MR. FEE:  Yes, your Honor.  And this will be the

16   subject I expect of the debate with the Court.  There are -- as

17   the psychiatrist would put it, not my words -- traumatic

18   experiences in his past associated with cash and finances that,

19   in her opinion, inform a condition that has led to this habit.

20             THE COURT:  Government?

21             MR. MARK:  I think Mr. Richenthal is the attorney who

22   is going to be dealing with these motions, if I may give it to

23   him.

24             MR. RICHENTHAL:  The motions aren't drafted yet.  With

25   those grains of salt, I am happy to explain our concern with

O4N3MENC

1    both those experts.  Mr. Hana has also noticed an expert who we

2    have concerns about as well.

3          MR. LUSTBERG:  Two.  One is in case there are

4    differences in translations from the Arabic.  So we don't

5    have -- some of the transcripts we've gotten very recently and

6    there may be differences.  And as we said in our notice, only

7    if there are differences will we need an expert to testify as

8    to the different translations.  The other is --

9          THE COURT:  I don't think I'd have an issue with that,

10   but go ahead.

11         MR. LUSTBERG:  The other is Mr. Hana, there has been

12   an issue has been made as to how Mr. Hana has been able to get

13   the halal business he did.  And part of that is rooted in

14   Egyptian history, and in particular in the way that the current

15   Egyptian administration has rejected the Muslim Brotherhood

16   which was the -- which previously had the halal contract.  So

17   we have an expert who will be prepared to testify as to that

18   arc of Egyptian history, and the fact that this current

19   administration has rejected the prior reliance on Muslim

20   Brotherhood based businesses.  So it is a historical expert.

21         THE COURT:  Why do I need an expert on that opposed to

22   somebody who can talk about it?

23         MR. LUSTBERG:  Perhaps somebody can talk about it.

24   But we didn't see anybody on the witness list who could.  And

25   it is a historian who can lay this out.  Because this is, seems

O4N3MENC

1    to me --

2              THE COURT:  Why is that -- again, I am just thinking

3    this off the top.  But why is that an expert?

4              MR. LUSTBERG:  Because somebody who understands

5    Egyptian history, and can apply it.  It is not even applying.

6    It is just to lay out the Egyptian history, to lay out the

7    context for -- that's what it is.

8              MR. RICHENTHAL:  I'm happy to respond with a preview

9    of our concerns or your Honor can wait for the papers.

10             THE COURT:  No, I'd like it.

11             MR. RICHENTHAL:  Taking them I think in the order that

12   Mr. Fee and Mr. Lustberg set forth.

13             So first as to the financial person that Mr. Menendez

14   has noticed, our concern is not that someone can't testify to

15   review of financial records.  Indeed, we may have the same

16   thing.  Summary witnesses are not uncommon.  I think probably

17   in this case it is probably an efficient use of the party and

18   the jury's time.

19             Our concern is no such expert on either side should

20   purport to have an opinion about other facts.  A person can say

21   I reviewed a bank statement and a statement shows X and Y and Z

22   and a person could aggregate sums.  But to then say from there,

23   what it means, what was found in the home, things like that, is

24   not in our judgment appropriate for expert testimony at all.

25   There are numerous lay witnesses who could or could not testify

12

O4N3MENC

1    to those facts.

2            So as to that person, our objection isn't to that

3    human being taking the stand.  It is to the scope of what

4    should be permitted, and whether the person should be qualified

5    as an expert or simply presented as a summary witness.

6            THE COURT:  I take it each of your expert notices set

7    forth the opinions.

8            MR. FEE:  That's right, your Honor.

9            MR. LUSTBERG:  Just summaries, of course, yes,

10   consistent with the rule.

11           MR. RICHENTHAL:  I would add, as to the person I just

12   talked about and as to the forensic psychologist, who I'll talk

13   about in a moment, we also have concerns about the adequacy of

14   the notice.  And I'm flagging that because your Honor just

15   talked about the notice.  In particular, it appears that both

16   individuals, not just the psychologist, spoke with

17   Mr. Menendez.  And yet the nature of those conversations, the

18   extent of those conversations and whatnot are not, in our

19   judgment, sufficiently provided in the notice.

20           In addition, at least one of the two notices of

21   Mr. Menendez is not signed by the alleged expert which is

22   required under Rule 16.  The exhibits or lack thereof that were

23   reviewed, for example, bank records, that's the financial

24   person, were not noted in the notice.  And as to the forensic

25   psychologist --

O4N3MENC

1          THE COURT:  I believe they have to be.

2          MR. RICHENTHAL:  That's our view.  We've advised the

3     defense over the weekend we thought the notice was

4     insufficient.  They said they'll circle back with us.  I expect

5     they'll do that, but I can't respond to something I haven't yet

6     seen.

7          As to the forensic psychologist, irrespective of the

8     adequacy of the notice, there are two issues.  One, while the

9     defense has couched this as a Rule 16 expert, we have some real

10    concern that what this really is is a Rule 12.1 or 12.2 expert.

11    In other words --

12         THE COURT:  That's what I was thinking.

13         MR. RICHENTHAL:  Mental disease or defect.  Under the

14    rules, as I'm sure the Court knows, we would be entitled with

15    the Court's authorization to examine Mr. Menendez.  We've asked

16    for that opportunity.  The defense has not responded yet.  I

17    assume, again, they'll respond in good faith.  But, that's an

18    issue.

19         But putting aside the procedures, and they're

20    important, notice is important, examination is important, but

21    just tabling all of that, our view at the core is this is just

22    wildly inappropriate as expert testimony.

23         The senator, his wife, potentially others, could talk

24    about a history of hoarding cash, if there is such a history.

25    They could talk about how they store cash or other items,

1   assuming there is some habit, or other appropriate testimony to

2   be given on those matters.  It is not beyond the ken of the

3   average juror; indeed, it strikes me as classic fact testimony.

4          So we do have very serious concerns about the adequacy

5   of the notice and whether we'll be sufficiently able, in light

6   of the trial date, to examine the senator.  We have core

7   concerns it is inadmissible on its face.

8          That's the quick version.  I'm happy to talk about

9   those two or I can --

10         MR. FEE:  Can I respond to those briefly?

11         THE COURT:  This is just a preview.  I want to be able

12  to get your submissions.

13         You can respond.

14         MR. FEE:  Just briefly, we'll address with the

15  government the procedures and notice issues, and we have more

16  information to give.

17         Starting with the analyst, I think we could have

18  discussions with the government to try to narrow the scope of

19  the dispute.  We're not going to have -- we're not going to put

20  somebody on to comment on other -- to make conclusions about

21  conduct.  The analyst would only be looking at financial

22  spending history.  And this is a reaction to the government

23  making clear in its own motions in limine that they are going

24  to make this a component of their argument.  Essentially, the

25  senator was living beyond his means, had fancy tastes, and

O4N3MENC

1    that's why he needed to take bribes.  It is a motive argument

2    that the government has introduced into the case.  But I think

3    we can engage with them and perhaps address some of their

4    concerns.

5            On the psychiatrist, your Honor.  You are going to

6    hear all this, I won't waste time.  Mr. Richenthal just used

7    the word "hoarding."  That is a characterization, and this is

8    exactly what renders this doctor appropriate for the jury to

9    understand what it means for someone to engage in a behavior

10    that many folks would use a word like hoarding to describe.

11    It's weird, I don't get it, it must indicate something

12    suspicious, when it is in fact actually a component of the DSM

13    that psychiatrists can describe based on an examination of a

14    person.

15            I don't want to go into the personal details, you'll

16    see it in the notices, your Honor.  But there is a really

17    tragic personal history with the senator and his family that I

18    think the Court -- the Court should keep an open mind when it

19    hears the basis for the psychiatrist's opinion.

20            THE COURT:  All right.

21            MR. RICHENTHAL:  I will respond only briefly because I

22    don't want to turn this into ping pong, and it sounds like the

23    parties will be resting on the papers.

24            I am not trying to disparage a choice one might make

25    to keep cash.  The question for the jury, in our judgment, the

O4N3MENC

1    only question on this point for the jury, is was the cash from

2    bribes or something else.  That's a fact question.  Not an

3    expert question.  There are plenty of ways for Mr. Menendez to

4    put forth it's from something else, if he so wishes.

5              Our concern, to put a very fine point on it, is what

6    has happened is a psychologist has been retained to speak with

7    the senator, the senator's told a psychologist things, the

8    psychologist is now going to say those things, without our able

9    to cross-examine the senator.  That's a problem.  It is a very

10   serious problem.  Even if the notices were sufficient -- and

11   let me also notice Mr. Fee has correctly, in my judgment,

12   referenced the Diagnostic Statistical Manual, the DSM.  That's

13   mental disease or defect.  There are notice obligations

14   triggered by the defense when they do that, including our

15   ability to examine Mr. Menendez.

16             Trial is looming.  And this is a serious problem.

17             So again, there is a notice or procedural issue, and

18   there is a substantive issue.  On the substance, I think the

19   parties are more than free to fight about where the money came

20   from  The question is, is essentially an expert allowed to get

21   on the stand and say I've talked to Mr. Menendez, who we have

22   no right to call as a witness, he told me X, and I conclude

23   it's not from bribes.  We have very serious concerns about the

24   admissibility of such testimony, even properly noticed.

25             Now as to the final expert to which I alluded, it is

O4N3MENC

1    Mr. Hana's historian.  We obviously have no concern with the

2    proffered expert as to Arabic translations.  My hope, my

3    expectation is it won't be necessary, that the parties will

4    agree on translations, and that is why I referred to one expert

5    of Mr. Hana we have concern about, not two.

6         As to the historian, there's two problems here in our

7    judgment.  One, we are not alleging that Senator Menendez

8    caused Egypt to give the monopoly to Mr. Hana.  We are alleging

9    that Senator Menendez took actions to stop the United States

10   Department of Agriculture from helping to get Egypt to remove

11   the monopoly, which is a separate point.  I understand there is

12   a relationship in general between those two things, but they're

13   not the same thing.

14        But even if we were alleging that the monopoly were

15   obtained literally as a result of bribes, which we have never

16   alleged and do not intend to try to prove, it's again not

17   expert testimony.  There were numerous people, in fact we are

18   going to call one, who was involved in this whole story about

19   why is there a monopoly, where the USDA think there shouldn't

20   be a monopoly, what has Egypt said about the monopoly.  It's

21   classic fact testimony.  What happened.

22        For an expert to talk about the history of Egypt, the

23   history of the Muslim Brotherhood, and for the expert to opine,

24   as a result this particular event must have occurred for

25   particular reasons, is improper.  It's not even a historian's

O4N3MENC

1    role.  A historian's role is past.  This is not that far past.

2           We don't think it belongs in front of the jury.  We

3    think it will result in a mini trial about the Muslim

4    Brotherhood in Egypt, which the Court may be aware is an

5    incredibly complicated subject.  That organization is not even

6    recognized as a terrorist organization by the United States.

7    And it is going to turn the trial into something the trial need

8    not and should not be about.

9           THE COURT:  When am I going to get these papers?

10          MR. RICHENTHAL:  Our hope was to prepare and file them

11    by as soon as Monday.  I don't know realistically we can do it

12    sooner.  We can try, but our hope was to do it on or before

13    Monday.

14          I will say one reason I am saying that is we would

15    like to have a complete notice before we respond.  We can

16    obviously respond in part.  I'm referring now to both the

17    psychologist and the financial person.

18          THE COURT:  No.  We'll handle the notice first.  All

19    right.  Monday.  Do it by Monday if you can.

20          MR. RICHENTHAL:  We will do our best.  We asked the

21    defense to revise the notice yesterday.  We really hope we get

22    revised notices sooner rather than later.

23          THE COURT:  That brings up something else.  The

24    purpose of this conference was going to be a Section 6

25    conference.  It's devolved into a unclassified discussion.  It

O4N3MENC

1    seems to me this transcript should be released to the public.

2    I don't think we have said anything that's classified.

3            Can I turn to our CISO.  I don't know whether you want

4    to go on the record, sir.

5            MR. RUCKER:  I believe it's unclassified.

6            THE COURT:  All right.

7            MR. MARK:  Your Honor, we would just ask just for the

8    opportunity, since all this happened very quickly, to just have

9    the ability to just review that before there is a determination

10   on that, because there might have been some stray references.

11   I'm not saying there are.  Out of prudence, the ability to

12   quickly review that, and we can request the transcript as

13   quickly as the court reporter is able to provide it.

14           THE COURT:  All right.  Thank you.  You'll get it to

15   me by the end of the day.

16           Anything else?

17           MR. LUSTBERG:  No, your Honor.  Thank you.

18           (Adjourned)

19

20

21

22

23

24

25