

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 5, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
               S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned matter in opposition to defendant Wael Hana's motion to strike the testimony of the Government's first summary witness, Special Agent Michael Coughlin, or to use the cross-examination of its next summary witness, Special Agent Rachel Graves, to conscript her into service as a *defense* summary witness by seeking to prove the content of extraneous defense documents during the Government's case. (Dkt. 441.)  Since the proper means of introducing defense documents is through a defense case (including through a defense summary witness, if the defense wishes to call one), this motion should be denied.

      I.      **The Government's Use and Anticipated Use of Summary Charts**

      Because this case involves voluminous summary evidence, the Government has presented through Special Agent Michael Coughlin, and intends to continue to present through summary witnesses Special Agent Rachel Graves and Special Agent Paul Van Wie, large volumes of documentary evidence through the use of chronological summary charts.[1]  This well-accepted practice is an efficient way of presenting documentary evidence and indeed is likely the only feasible way to present evidence in a case that involves this volume of relevant documents.

      The testimony and anticipated testimony of Special Agents Coughlin, Graves, and Van Wie in each case relates almost exclusively to their verification of detailed chronological summary charts (Government Exhibits 1302 and 1303, with which the Court is familiar, as well as Government Exhibit 1304, which the Government is in the process of assessing and responding to

---

[1] The Government also intends to call one or more additional witnesses to summarize smaller volumes of documents distinct from the overall chronologies set forth in the testimony and summary charts of Special Agents Coughlin, Graves, and Van Wie.

Honorable Sidney H. Stein
June 5, 2024
Page 2

defense objections to, after having circulated a draft to defense counsel on April 28, 2024), and their reading from the charts and related documents in evidence. These charts set forth detailed chronologies of the aspects of the scheme related to Robert Menendez's promised, agreed, and/or undertaken acts to benefit Wael Hana and Egypt (Government Exhibit 1302), to benefit Uribe and Uribe's associates (Government Exhibit 1303), and to benefit Daibes and assist Daibes by benefiting the Government of Qatar (Government Exhibit 1304). The summary witnesses have, and will, read from the charts and (to a lesser extent) certain documents underlying the chart and other documents related to these matters (including limited ancillary confirmatory steps, such as reviewing certain publicly available information, or providing verbal summaries of information drawn from specific Government Exhibits in evidence). None of the witnesses has interpreted or will interpret the meaning or significance of the documents, none of them has drawn conclusions or will draw conclusions, and none of them has any personal knowledge of the underlying facts or will purport to have such knowledge.

The use of summary charts, like Government Exhibits 1302, 1303, and 1304, to organize and present various types of evidence into timelines has repeatedly been recognized by the Second Circuit as useful to the jury and permitted by Rule 1006. *See, e.g.*, *United States v. Ho*, 984 F.3d 191, 209-10 (2d Cir. 2020) (hundreds of pages of text messages, emails, and other documents "merited the use of summary charts in a complex fraud trial"); *United States v. Miller*, 954 F.2d 551, 565 (2d Cir. 2020) (affirming admission of summary chart of "hundreds of calls and text messages" and explaining that "this information would have been difficult for the jury to synthesize and evaluate without the aid of a summary"); *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (affirming admission of "government's summary charts set forth detailed information concerning well over 100 telephone calls spanning three days between four individuals"); *see also United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003) (stating that the Second Circuit has "regularly affirmed" the use of summary charts "to draw the jurors' attention to particular evidence culled from a voluminous set of records").[2]

Hana's claim that the summary charts function as an effective summation (Dkt. 441 at 5) is simply a recycling of Menendez's prior similar claims (Dkt. 406 at 2), and is no more persuasive the second time. *See* Tr. 1012 (The Court: "The format of the summary chart seems to me quite appropriate, and there is nothing unusual about it. The items are certainly voluminous, and it seems to me, under 1006, that the chart can be admitted."). Unlike a summation, the summary witness testimony does not draw any conclusions, offer any interpretations, or contain any argument whatsoever. Rather, by highlighting certain pieces of evidence and drawing the jurors' attention to their chronological sequence, it assists the jury's comprehension of a complex set of facts drawn from multiple different sources. *See, e.g.*, *United States v. Lemire*, 720 F.2d 1327, 1350 (D.C. Cir. 1983) ("[A] summary should not draw controversial inferences or pronounced judgment; these functions are best left to the closing argument of counsel. Here, however, the

---

[2] Although not required by the text of Rule 1006, the Government has no objection to a limiting instruction, as was given and affirmed in *Ho*, that "the charts themselves d[o] not constitute independent evidence and that it [i]s the jury's duty to first determine that they accurately reflected the evidence on which they [a]re based." 984 F.3d at 210; *see also id.* ("This court has long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations, so long as the judge properly instructs the jury, as the judge did here, that it is not to consider the charts as evidence." (internal quotation marks omitted)); *see also Yousef*, 327 F.3d at 158 ("any possible prejudice" "was cured" by similar instruction).

Honorable Sidney H. Stein
June 5, 2024
Page 3

summary involved only routine computations and culling through of documents to eliminate confusing and extraneous evidence. Consequently we find no force to the argument that [the summary witness's] testimony provided an unwarranted second closing for the government."). As the Government has explained in offering Special Agent Coughlin's summary chart, there is no requirement for jurors to themselves locate a series of different data points from different sources within the totality of the admitted evidence, pull out the relevant pieces, then line them up chronologically so that they can understand such a sequence of events. Rather, that kind of laborious, time-consuming task is exactly why Federal Rule of Evidence 1006, allowing the admission of summary charts, exists. If the Government were not permitted to use such summary charts, the Government expects that it would have to call more witnesses and present more testimony to walk through hundreds of separate exhibits to convey the same information contained in these charts.[3]

The use of such summary charts is entirely permissible and appropriate under the law of the Circuit. *See, e.g.*, *Ho*, 984 F.3d at 209-10 (rejecting argument that timeline of selected exhibits could not be introduced under Rule 1006 because it was allegedly "created for the purpose of generating a narrative supporting the prosecution's theory of the case"). Indeed, the use of summary charts of exactly this form is so clearly proper that they have routinely been admitted over objection without even requiring written decision. *See, e.g.*, *United States v. Skelos*, No. 15 Cr. 317 (KMW), Tr. 2252-57, 2262 (S.D.N.Y. 2015) (rejecting defense argument that timeline charts were "argument presented through an FBI agent" and "in effect summation," and finding that "it is precisely the type of information that has been allowed to be used in charts"); *United States v. Calk*, No. 19 Cr. 366 (LGS), Tr. 2-3 (S.D.N.Y. June 22, 2021) (admitting similar timeline charts over objection); *United States v. Gatto*, No. 17 Cr. 686 (LAK), Tr. 1443-1448 (S.D.N.Y. Oct. 16, 2018) (rejecting reliance on Fifth Circuit precedent regarding Rule 1006 in admitting summary chart that defense claimed should be used in "closing" instead). The challenged charts here (Government Exhibits 1302, 1303, and 1304) are virtually identical in form to charts approved in *Skelos* and *Calk* (*see* Dkt. 409 Exs. B, C), and should similarly be admitted.[4]

Hana's attempt to distinguish this precedent is to claim that the Government's summary charts simply summarize *too much* information, an ironic reversal of Menendez's prior claim that they do not summarize *enough*. (*Compare* Dkt. 441 at 5-6 *with* Dkt. 406 at 2). But the large volume of documents being summarized is an argument for, not against, the use of summary charts, as the Second Circuit recognized in *Ho*. 984 F.3d at 209; *see also id.* at 210 ("[W]hile it is true that summary charts are sometimes used to synthesize even larger volumes of documentary evidence than was the case here, it was clearly not an abuse of discretion for the district court to

---

[3] If the Government were somehow precluded from doing that, it might simply be unable— perhaps as Hana intends—to prove aspects of the case as to which there is no available percipient witness, no matter how powerful the documentary evidence. Such an absurd result would be inconsistent with controlling precedent and contrary to the interests of justice.

[4] As the Government raised in its motions *in limine*, neither Menendez nor his co-defendantsshould be permitted to argue, as Menendez did in his District of New Jersey case, that there is anything improper or unfair about summary witness testimony or summary charts the Court allows into evidence. (*See* Gov't MIL (Dkt. No. 291) at 12-13 (quoting arguments from Menendez's counsel during the District of New Jersey trial, including asking jurors to "be mad" about the Government's use of a summary witness and calling such a witness an "invented" witness).)

conclude that hundreds of pages of evidence merited the use of summary charts."). Contrary to Hana's arguments, each of these charts deals with a particular timeline and topic and limited group of participants, rendering their volume the only distinction between them and the charts that have been admitted in other cases. (*Cf.* Dkt. 441 at 5 (describing admissible charts as "tailored in timeline, topic, and by participant").) As the volume of the information summarized counsels in favor of summary charts, Hana provides no basis for exclusion.

Perhaps realizing that his objections to the testimony and charts that the Government is actually offering are unavailing, Hana goes far astray in citing cases about an entirely different— and widely condemned—type of witness: the law enforcement agent who gives an "overview" of the prosecution's case. (Dkt. 441 at 4-5). An "overview" witness is not a type of witness who, like the summary witnesses in this case, verified the accuracy of and read from charts of admitted evidence without comment or conclusion. Rather, an "overview" witness is a type of witness who offered "lay opinion providing a summary overview of anticipated evidence," *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005), "gave his personal opinion as to guilt or innocence," *United States v. Moore*, 651 F.3d 30, 58 (D.C. Cir. 2011), and "essentially testified that each of the defendants was guilty of the conspiracy charged," *United States v. Flores-De-Jesus*, 569 F.3d 8, 24 (1st Cir. 2009). Special Agent Coughlin did nothing of the sort, and nor will Special Agents Graves or Van Wie. None of them will testify about the full scope of the Government's case, will generalize about the Government's evidence, or will suggest any inferences from the evidence at all. Rather, their testimony has focused and will continue to focus on the chronology of the interactions between the coconspirators and relevant third parties, as reflected in the portions of the documents referenced in the charts.

Nor is the fact that the testimony consists largely of reading from the summary charts or (to a lesser extent) the underlying documents a ground for objection. By reading aloud from emails or text messages, the summary witnesses are able to quickly draw the jury's attention to the portions of those messages that are relevant in light of the other evidence, efficiently presenting a portion of the Government's case in a way that jurors can readily understand. It is reading directly from—rather than interpreting—the evidence that makes Special Agent Coughlin, Special Agent Graves, and Special Agent Van Wie proper summary witnesses. *See, e.g.*, *United States v. Denton*, 944 F.3d 170, 185 (4th Cir. 2019) (finding no error in permitting a special agent to read portions of defendant's Facebook records to the jury); *United States v. Tragas*, 727 F.3d 610, 614 (6th Cir. 2013) ("As long as the evidence itself is properly admitted pursuant to the Rules of Evidence and does not run afoul of other safeguards like the Confrontation Clause, [the Court does] not see how a defendant could be prejudiced if the evidence is read aloud to the jury.").

II.     **The Scope of Cross-Examination for Summary Witnesses**

Hana seeks, in the alternative, permission for a form of cross-examination that would essentially conscript the Government's witnesses into service as summary witnesses for the defense during the Government's case. This procedure is routinely rejected and should be rejected here as well.

The defense certainly remains free to ask any of the summary witnesses about matters such as the accuracy of the summary charts, the method of their verification, and whether the evidence reflected in the charts was chosen by the prosecutors, all of which are common points of cross-examination for any summary witness. And to the extent that defense counsel wishes to draw the

jury's attention to limited portions of the charts or underlying documents that specifically contradict or place evidence summarized in a different light—akin to matters within the scope of Rule 106—those subjects are also appropriate for cross-examination. But defense attempts to simply read at length portions of documents that they consider favorable to them in general are likely best reserved for the defense case, and attempts, such as Hana presses, to introduce entirely different documents, that the witness has no knowledge of, to advance defense theories, are plainly outside the scope of direct examination and should be precluded under Rule 611(b).

In testing the bounds of Rule 611(b), Hana appears to be attempting to build his direct case through cross-examination, by exploring exhibits about which the witness knows nothing and did not testify, but which support defense themes. (Dkt. 441 at 7-8.) This technique obviously consumes far more of the jury's time than an orderly and direct presentation of the defendant's evidence during the defendant's case-in-chief. Where the defense attempts to proceed as Hana proposes, district courts enforce Rule 611(b) for the sake of efficiency. *See, e.g.*, *United States v. Londonio*, 17 Cr. 89 (CS) (ECF No. 857) (S.D.N.Y. 2019) (requesting that scope of cross be limited to scope of direct for purposes of efficiency, and that inquiry into other matters be conducted during defense case); *Londonio* Tr. 592 (granting request); *United States v. Calk*, 19 Cr. 366 (LGS) (ECF No. 230) (S.D.N.Y. 2021) (similar, including with respect to summary witness); *Calk* Trial Tr. 388 (granting request, remarking "The defendant is certainly entitled to elicit that the documents summarized were selected by the prosecutors, that they are a selective set, and that those are the only ones she summarized and that there are other documents, perhaps many documents that are pertinent to the case and pertinent to the defense case that she did not summarize and that were not brought out on her direct. . . . But, it's not an opportunity for the defense then to take all of those documents in the defense case and say, oh, and you didn't summarize this one which says X, Y, Z, or this one which says X, Y, Z, or this one. That is for your defense case, that is not within the proper scope of cross-examination of a summary witness.").

The Court's discretion to efficiently manage examination of witnesses under Rule 611(a) is similarly broad. *See, e.g.*, *United States v. Whitten*, 610 F.3d 168, 183 (2d Cir. 2010) (citing, among other cases, *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Where courts have required defendants to present their affirmative case in their case-in-chief, rather than through cross-examination, the trial courts' decisions are regularly affirmed. For example, in *United States v. Stadtmauer*, the district court prevented the defendant from admitting documentary evidence during cross-examination because the materials were "not really specifically impeachment material, but more akin to case-in-chief type evidence." 620 F.3d 238, 272 (3d Cir. 2010) (internal quotation marks omitted)). On appeal, the defendant argued that the materials fell within the scope of direct examination under Rule 611(b), and so the district court should have allowed their use on cross. The Third Circuit had "little trouble concluding that the District Court did not abuse its discretion in postponing the admission of [the defendant]'s proposed exhibits" until his case-in-chief. *Id.* As it explained, the district court had ample authority to manage the presentation of evidence, including its timing. *Id.* Other courts have readily reached the same conclusion. *See, e.g.*, *United States v. Lambert,* 580 F.2d 740, 747 (5th Cir. 1978) (district court did not abuse its discretion under Rule 611(a) by excluding defendant's "proffers of voluminous documentary evidence" during cross-examination); *United States v. Ellison*, 557 F.2d 128, 135 (7th Cir. 1977) (district court did not abuse its discretion by excluding proposed defense exhibits during cross-examination, even assuming the documents "would have been relevant rebuttal evidence if offered during the presentation of [the defendant's] own case").

Indeed, the Second Circuit has affirmed limiting the cross-examination of law enforcement witnesses who provide summary testimony to the scope of the direct examination. *See United States v. Koskerides*, 877 F.2d 1129, 1134, 1136-37 (2d Cir. 1989) (affirming limiting scope of cross-examination of witness who performed net worth calculations, to exclude loans the witness had not testified about); *id.* at 1137 (affirming limiting scope of cross-examination of witness who testified as to gross receipts from a diner, to exclude questioning about the nature of the diner or the circumstances of its sale). And in circumstances strikingly similar to here, the D.C. Circuit has affirmed the limitation of cross-examination of a summary witness on matters outside the scope of the witness's testimony. In *Lemire*, the D.C. Circuit considered a summary witness whose testimony summarized the Government's evidence on certain cash flows, and affirmed the preclusion of cross-examination on a defendant's cost of shipping, a defense theory allegedly undercutting the evidence that the defendant company had engaged in overcharging. *Lemire*, 720 F.2d at 1349. In doing so, the D.C. Circuit adopted the holding that "A summary, to be admissible . . . need not give effect to the contentions of the accused," but instead the only requirement was "that the summary be what it purports to be." *Id.* (internal quotation marks omitted). Accordingly, the D.C. Circuit affirmed the preclusion of cross-examination about extraneous defense theories, just as the Court should do here.

Ultimately, the supposed unfairness Hana claims is entirely illusory. If he wishes, in his case-in-chief, to put forth a summary witness that reads from documents without interpretation in the manner that the Government's summary witnesses do, he is entitled to do so within the bounds of the Federal Rules (including Rule 403) and the Government will in its cross-examination be properly limited to scope of the direct examination just as the defendants should be with respect to the Government's summary witnesses. What Hana is not entitled to do is to use the Government's summary witness as his own by forcing a witness with no personal knowledge to read extraneous documents of which he or she has no personal knowledge and did not testify, all the while armed with leading questions that would be impermissible in a defense case. *Calk* Trial Tr. 388 ("[I]t's not an opportunity for the defense then to take all of those documents in the defense case and say, oh, and you didn't summarize this one which says X, Y, Z, or this one which says X, Y, Z, or this one. That is for your defense case, that is not within the proper scope of cross-examination of a summary witness.").

Honorable Sidney H. Stein
June 5, 2024
Page 7

  Accordingly, the Court should limit cross-examination to the scope of direct examination to facilitate the efficient presentation of evidence in this action.

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney

         By:  <u>s/ Paul M. Monteleoni</u>
             Eli J. Mark
             Daniel C. Richenthal
             Paul M. Monteleoni
             Lara Pomerantz
             Catherine E. Ghosh
             Assistant United States Attorneys
             (212) 637-2431/2109/2219/2343/1114
             Christina A. Clark
             Special Assistant United States Attorney
             (202) 307-5191

cc:  (by ECF)

  Counsel of Record