

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 6, 2024

**By ECF**

The Honorable Sidney H. Stein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Robert Menendez, et al.*,
              S4 23 Cr. 490 (SHS)

Dear Judge Stein:

      The Government respectfully writes in the above-captioned case with respect to two matters that may arise as soon as tomorrow, June 7, 2024, in the afternoon, in connection with cooperating witness Jose Uribe's testimony. First, the Government advises the Court that the Government intends to elicit Uribe's testimony as to his understanding of the statements made and actions undertaken by his co-conspirators or associates during and in connection with communications or conversation with them. Second, because Uribe's credibility was attacked during Menendez's opening statement, the Government intends to introduce Uribe's cooperation agreement during the Government's direct examination.

      **I.**    **Uribe Should Be Permitted to Testify as to His Understanding of His Co-Conspirator's Statements and Actions**

      The Court should permit Uribe to testify about his understanding of what was said and what was conveyed to him by the demeanor and actions of those he conspired with and others with whom he had relevant communications and interactions. This testimony is admissible for any lay witness where relevant, but takes on particular importance in the case of Uribe, a co-conspirator whose criminal understanding is highly relevant to establishing one or more elements of the charged offenses. This is so for multiple reasons.

      *First*, allowing a participant to a conversation to explain his own understanding of statements made during that conversation is both proper and useful to the jury. *See, e.g.*, *United*

Honorable Sidney H. Stein
June 6, 2024
Page 2

*States v. Urlacher,* 979 F.2d 935, 939 (2d Cir. 1992) ("Ruffin, as a participant in the conversations, had first hand knowledge of the conversations. Furthermore, his testimony was helpful to the jury's understanding of the often confusing and disjointed discussions on the tapes."). That is expected to be especially true with respect to Uribe, through whom the Government intends to offer communications with Hana, Nadine Menendez, Menendez, the New Jersey Defendant, Associate-1, Associate-2, Associate-3, and others that, at least in some cases, are coded or subject to interpretation. *See, e.g.*, *United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008) ("[T]he government may call witnesses to provide insight into coded language through lay opinion testimony" so long as the testimony is based on the witnesses' "insider perceptions"). For example, in *United States v. Rowland*, 826 F.3d 100, 115 (2d Cir. 2016), a witness was properly permitted to "testify about the meaning of [the defendant's] use of expressions like 'I get it,' 'this arrangement,' and 'cover,' because those expressions were ambiguous without the context that [the witness] supplied." The Government expects Uribe to testify regarding similar language in meetings, calls, and text or other written messages between Uribe, Hana, Nadine Menendez, Menendez, the New Jersey Defendant, Associate-1, Associate-2, Associate-3, and others. The Government will, to the extent warranted, lay a foundation for such testimony by eliciting from the witness the nature and frequency of his communications with those individuals, including conversations about the coded subjects, after which it will be entirely proper for Uribe to offer his understanding of the conversation to which he was a party.

*Second*, allowing a scheme participant to offer his understanding of the meaning of others is also entirely proper because it helps explain the witness's own actions. *See, e.g.*, *United States v. Morton*, 391 F.3d 274, 277 (D.C. Cir. 2004) ("A witness's testimony about his own state of mind is not opinion testimony."); *United States v. Giovannetti*, 919 F.2d at 1226 (7th Cir. 1990) (approving admission of testimony where witness "was not being asked to draw an inference for the jury's benefit--to formulate an opinion in litigation--but rather to explain the basis on which he had drawn an inference in the past."); *United States v. Offill*, 666 F.3d 168, 177–78 (4th Cir. 2011) (co-conspirator's testimony about the conspiracy's "nature and illegality" based on first-hand knowledge would plainly be helpful to the jury, "because it [would] shed light, based on [the co-conspirator's] personal knowledge of his own illegal conduct, on the nature and purpose of the conspiracy and [the defendant's] interaction with [the co-conspirator] in furthering its illegal aims."). Here, Uribe must be permitted to explain his understanding of what certain conversations or communications were about and what he understood had been decided upon in such conversations or communications, otherwise his subsequent actions would make little sense.

*Third*, as a co-conspirator, Uribe's mental state and his understanding are directly relevant to proving elements of the charged offenses. In short, in addition to being relevant and admissible evidence of the meaning of what was said to him, and of the basis of his actions, Uribe's understanding of what his co-conspirators were saying to him and doing in furtherance of the scheme is itself proof of at least one element of several of the charged offenses. *See, e.g.*, *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) ("It is not necessary to prove that the defendant expressly agreed with other conspirators on a course of action; it is enough, rather, to show that *the parties had a tacit understanding* to carry out the prohibited conduct" (emphasis added, internal quotation marks and brackets omitted)). Indeed, it is a standard jury instruction that "the essence of the crime of conspiracy is an agreement or an understanding to commit a crime" (*see* Dkt. 353-1

Honorable Sidney H. Stein
June 6, 2024
Page 3

at 56 (defense request to charge requesting this language); Dkt. 354 at 52 (Government request to charge requesting this language)), and that "when people in fact undertake to enter into a criminal conspiracy, much is left to unexpressed understanding" (*see* Dkt. 354 at 111). It is thus highly relevant, and routinely permitted, for a conspirator to testify as to his understanding of the words and conduct of his co-conspirators.

## II. Uribe's Cooperation Agreement Should Be Admitted on Direct Examination Because His Credibility Has Been Attacked

It is settled law that cooperation agreements may be admitted in their entirety after the credibility of the witness to whom the cooperation agreement pertains has been attacked. *See, e.g.*, *United States v. Cosentino*, 844 F.2d 30, 33 (2d Cir. 1988); *United States v. Borello*, 766 F.2d 46, 56 (2d Cir. 1985); *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1146 (2d Cir. 1978). It is not required for the Government to wait for the attack to occur during cross-examination of the witness. Rather, where a defendant attacks a witness's credibility in an opening statement, the Government may admit the entirety of the cooperation agreement on direct examination. *See Cosentino*, 844 F.2d at 33 (where the opening statement "sufficiently implicates the credibility of a government witness . . . testimonial evidence of bolstering aspects of a cooperation agreement may be introduced for rehabilitative purposes during direct examination"); *see also United States v. Certified Env't Servs., Inc.*, 753 F.3d 72, 86 (2d Cir. 2014) (opening statement can "open the door to admission of the [cooperation] agreement"); *United States v. Quinones*, 511 F.3d 289, 313 n.16 (2d Cir. 2007) ("Because defendants attacked the credibility of government witnesses in their opening statements, their challenge to the elicitation of this rehabilitative testimony on direct rather than redirect examination is unavailing."); *United States v. Gaind*, 31 F.3d 73, 78 (2d Cir. 1994); *United States v. Smith*, 778 F.2d 925, 928-29 (2d Cir. 1985). This is because, in such circumstances, the "'rehabilitation' stage has already been reached on direct." *Cosentino*, 844 F.2d at 33; *see also United States v. Jones*, 763 F.2d 518, 522 (2d Cir. 1985) ("Since the[] opening statements by defense counsel attacked the credibility of the government witnesses, appellants may not be heard to complain at their rehabilitation on direct examination.").

Here, Menendez made just such an attack on Uribe's credibility during his opening statement. Specifically, Menendez's counsel stated, "As I mentioned, there won't [be] a single witness who walks into court and says that they discussed a bribe or gave a bribe to Senator Menendez -- not one -- not even the government's cooperating witness who you heard about, José Uribe. We'll have a lot to discuss at the end of the case about him, *about his lies and his cheating and his crimes and all the ways he's been incentivized to continue doing all of them*." (Trial Tr. 92:14-21.) In highlighting Uribe's alleged "lies," "cheating," "crimes," and "incentive[s]" to continue lying, cheating, and engaging in criminal behavior, *id.*, Menendez opened the door to the Government seeking to rehabilitate Uribe through the introduction of his cooperation agreement on direct examination. Indeed, Menendez's assertions are precisely the kind of statements that courts have found render rehabilitation permissible on direct examination. *See, e.g.*, *Jones*, 763 F.2d at 522 (comments in defendant's opening statement regarding immunity status, which meant the witnesses had committed "many crimes, and they are not going to be prosecuted" opened the door to rehabilitation on direct examination); *Gaind*, 31 F.3d at 78 (questioning witnesses' "motives and their agendas"); *Quinones*, 511 F.3d at 313 (describing witnesses as "likely to say or

Honorable Sidney H. Stein
June 6, 2024
Page 4

do anything on the witness stand as long as they believe it pleases the prosecutors" and having a "strong motivation … to please the government"); *Cosentino*, 844 F.2d at 32 (characterizing witnesses as "raised up from the muck" who will "try to give the government what they want"); *United States v. Williams*, 787 F. App'x 8, 10 (2d Cir. 2019) (claiming witness's forthcoming testimony would be "riddled with inconsistencies" and "not make sense"). In light of Menendez's attack on Uribe's credibility, he cannot "be heard to complain at the[] rehabilitation on direct examination," *Jones*, 763 F.2d at 522, and the Government should be permitted to introduce Uribe's cooperation agreement on direct examination to rehabilitate Uribe's credibility.

    Respectfully submitted,

    DAMIAN WILLIAMS
    United States Attorney

By:    s/ Daniel C. Richenthal
    Eli J. Mark
    Daniel C. Richenthal
    Paul M. Monteleoni
    Lara Pomerantz
    Catherine E. Ghosh
    Assistant United States Attorneys
    (212) 637-2431/2109/2219/2343/1114
    Christina A. Clark
    Special Assistant United States Attorney
    (202) 307-5191

cc:    (by ECF)

    Counsel of Record